IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CFGENOME, LLC, a Delaware limited liability company, and DR. M. ROHAN FERNANDO, an individual, | ) ) ) | No. |
| Plaintiffs, | ) ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | ) ) | |
| STRECK, INC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

Plaintiffs CFGenome, LLC and Dr. M. Rohan Fernando, by their attorneys, state the following as their Complaint against Defendant Streck, Inc.

## INTRODUCTION

1. Defendant Streck, Inc. ("Streck") is a leading manufacturer of control substances for use in urinalysis, cell stabilization, immunology, chemistry, and point-of-care medical devices.

2. Plaintiff Dr. M. Rohan Fernando ("Dr. Fernando") worked as a senior research and development scientist at Streck until early September 2014. At that time, Dr. Fernando resigned from Streck because his mentor and colleague, Dr. Wayne Ryan, the founder and former CEO of Streck, had been pushed out of the company by Streck's new CEO, Connie Ryan (Dr. Ryan's daughter).

3. After his employment at Streck, Dr. Fernando began various research projects, and worked as a consultant for Plaintiff CFGenome, LLC.

4. Streck has learned that Dr. Fernando and CFGenome have developed a new product which stands to revolutionize diagnostic testing at the molecular level. Streck claims

that by developing this new product, Dr. Fernando has misappropriated confidential information and trade secrets and violated a contract between Streck and Dr. Fernando.

5. Plaintiffs seeks a declaration that: a) they have not misappropriated Streck's trade secrets as defined by the Defend Trade Secrets Act of 2016; and b) that Dr. Fernando has not breached any of his post-termination obligations to Streck.

## THE PARTIES, JURISDICTION, AND VENUE

6. Plaintiff CFGenome, LLC is a Delaware limited liability company. CFGenome is the assignee of certain of Dr. Fernando's intellectual property rights, including the rights to the product at issue here.

7. Plaintiff Dr. M. Rohan Fernando, an individual, is a resident and citizen of Nebraska.

8. Streck is a Nebraska corporation with its principal place of business located in La Vista, Sarpy County, Nebraska.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, in that this is a civil action arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over all other claims in this action under 28 U.S.C. § 1367, as the claims form part of the same case or controversy.

10. This claim also arises under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201 which grants the court the power to declare the rights, status, and other legal relations between the parties. In addition, venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiffs' causes of action occurred in this judicial district.

# FACTUAL BACKGROUND

*Dr. Fernando's Resignation from Streck*

11. Plaintiff Dr. Fernando is a scientist with over 20 years of experience in the biochemical and molecular biology fields. Dr. Fernando holds a Ph.D. in Molecular Medicine, an M. Phil. in Clinical Biochemistry, an M.S. in Food Science, and a B.S. in Biology. He is the inventor or co-inventor listed on numerous patents and patent applications in these fields.

12. From 2007 until early September 2014, Dr. Fernando worked as a senior research and development scientist at Streck, reporting to Dr. Wayne L. Ryan, Streck's founder.

13. Streck is a leading manufacturer of controls for hematology laboratories. Streck develops and distributes, among other things, a specific blood collection tube called a Cell-Free DNA BCT®, which is a blood collection device to preserve and stabilize cellular and cell-free DNA ("Streck's BCT").

14. Streck filed numerous publicly-available patent applications regarding the findings of Dr. Fernando's research while he was employed at Streck.

15. In addition, Dr. Fernando published numerous articles and made public presentations regarding his research findings while he was employed at Streck.

16. On September 2, 2014, Dr. Fernando resigned from Streck because his mentor and colleague, Dr. Wayne Ryan, the founder and former CEO of Streck, had been forced out of the company by Streck's new CEO, Connie Ryan (Dr. Ryan's daughter).

17. Prior to his resignation, in late 2013, Dr. Fernando signed an Employee Confidential Information, Inventions, and Non-Solicitation Agreement regarding his work at Streck (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

3

18. The Agreement purports to require that Dr. Fernando assign to Streck all intellectual property rights in "Conceptions" conceived during Dr. Fernando's employment at Streck.

19. The Agreement also includes a one-year holdover provision requiring Dr. Fernando to assign any Conceptions that he conceived during the one year period following his resignation to Streck, if the Conception is conceived: a) "as a result of and attributable to" work done during his employment at Streck; and b) "relates to a method, substance, machine, article of manufacture or improvements" within the scope of Streck's business.

20. "New Inventions" assignable to Streck during that one year post-termination period are also defined under the Agreement to include inventions that either "relate at the time of conception or reduction to practice of the invention, to the Company's business or actual, anticipated or reasonably foreseeable research or development of the Company," or "result from any work performed by [Dr. Fernando] for the Streck invention."

*Dr. Fernando's Development of a New Product*

21. After his resignation from Streck, Dr. Fernando began working as a consultant for CFGenome. He focused his research on the development of certain diagnostic assays, or investigative procedures for qualitatively assessing or quantitatively measuring the functional activity of a target entity.

22. After the one year holdover period had expired, Dr. Fernando started working on an idea for a chemical composition to stabilize extracellular vesicles in a blood sample to be used in a blood collection tube. In doing so, Dr. Fernando developed CFGenome's Exo DNA ProTeck Blood Collection Tube, ("ProTeck BCT"). The chemical composition within the

ProTeck BCT can be used to aid in non-invasive, early detection and diagnosis (as opposed to screening) of pregnancy, chromosomal abnormalities of a fetus, and cancer.

23.     Dr. Fernando did not use any Streck confidential information or trade secrets in conceiving and developing the ProTeck BCT, and he did not violate any other provisions of the Agreement.

24.     Dr. Fernando's work was funded by Plaintiff CFGenome, and in a written agreement, Dr. Fernando agreed to assign any new inventions to CFGenome.

25.     On July 14, 2016, Streck's counsel sent a letter to one of Dr. Fernando's attorneys asserting that Dr. Fernando "may not be in compliance with his obligations to Streck" and asserting that Dr. Fernando necessarily resorted to using Streck's confidential information and trade secrets in order to create the ProTeck BCT.  It further demanded that in order to "avoid the potential escalation of this matter," Dr. Fernando was to provide certification of his work; and if he was "unwilling or unable to make the requested certifications, Streck will draw appropriate adverse inferences."  Plaintiffs construe this to be a threat of being sued by Streck.

### COUNT I-
### DECLARATION OF NO MISAPPROPRIATION OF TRADE SECRETS
### (Federal Defend Trade Secrets Act—18 U.S.C. § 1836)

26.     Plaintiffs reassert and reallege the allegations of paragraphs 1 through 25 as if fully set forth herein.

27.     The product which is the subject of this lawsuit is intended to be sold in interstate commerce and affects interstate commerce.

28.     Under the Defend Trade Secrets Act, a federal question arises with respect to whether a party misappropriates another party's trade secrets.

29. Streck has asserted that Plaintiffs used Streck confidential information and trade secrets in developing the ProTeck BCT.

30. Plaintiffs did not use any Streck confidential information or trade secrets.

31. There presently exists an actual controversy with respect to whether Plaintiffs misappropriated Streck confidential information or trade secrets.

## COUNT II-
## DECLARATION THAT DR. FERNANDO HAS NOT BREACHED PARAGRAPH 2 OF THE AGREEMENT

32. Plaintiffs reassert and reallege the allegations of paragraphs 1 through 25 as if fully set forth herein.

33. Streck has asserted that Dr. Fernando is not in compliance with his obligations under Paragraph 2 of the Agreement, relating to disclosure of confidential information and trade secrets.

34. Dr. Fernando has complied with all provisions in the Agreement.

35. An actual controversy exists between Dr. Fernando and Streck as to whether Dr. Fernando has violated Paragraph 2 of the Agreement.

## COUNT III-
## DECLARATION THAT DR. FERNANDO HAS NOT BREACHED PARAGRAPH 4 OF THE AGREEMENT

36. Plaintiffs reassert and reallege the allegations of paragraphs 1 through 25 as if fully set forth herein.

37. Streck has recently suggested that it does not believe that Dr. Fernando is in compliance with his obligations under Paragraph 4 of the Agreement.

38. Dr. Fernando has complied with all provisions in the Agreement.

39. An actual controversy exists between Dr. Fernando and Streck as to whether Dr. Fernando has violated Paragraph 4 of the Agreement.

## COUNT IV-
## DECLARATION THAT DR. FERNANDO HAS NOT BREACHED PARAGRAPH 5 OF THE AGREEMENT

40. Plaintiffs reassert and reallege the allegations of paragraphs 1 through 25 as if fully set forth herein.

41. Streck has asserted that Dr. Fernando is not in compliance with his obligations under Paragraph 5 of the Agreement, which prohibits solicitation of certain Streck customers that the employee actually did business with and had personal contact with during their employment at Streck for a 12 months period following termination (unless the employee receives approval from Streck's President).

42. Dr. Fernando has complied with all provisions in the Agreement.

43. An actual controversy exists between Dr. Fernando and Streck as to whether Dr. Fernando has violated Paragraph 5 of the Agreement.

## COUNT V-
## DECLARATION THAT THE HOLDOVER PROVISION OF PARAGRAPH 4 OF THE AGREEMENT IS VOID AS A MATTER OF PUBLIC POLICY
### (pled in the alternative to Count III)

44. Plaintiffs reassert and reallege the allegations of paragraphs 1 through 25 as if fully set forth herein.

45. Paragraph 4 of Agreement provides that all inventions conceived by Dr. Fernando in the one year period following his termination from Streck must be assigned to Streck if those inventions are: (i) conceived "as a result of and attributable to" work done during his employment at Streck, and "relates to a method, substance, machine, article of manufacture

or improvements" within the scope of business of Streck; (ii) "relate at the time of conception or reduction to practice of the invention, to the Company's business or actual, anticipated or reasonably foreseeable research or development of the Company," or (iii) "result from any work performed by [Dr. Fernando] for the Streck invention."

46. This provision is overbroad and is unreasonable in that it extends beyond any apparent protection that the employer reasonably requires, prevents the inventor from seeking other employment, or adversely impacts the public.

47. Thus, the holdover provision is unenforceable and void as a matter of public policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully submit and pray for a judgment in their favor and against Streck as follows:

a) the entry of a declaratory judgment that Dr. Fernando did not misappropriate any trade secrets or confidential information belonging to Streck;

b) the entry of a declaratory judgment that Dr. Fernando did not breach the Agreement, including, but not limited to, paragraphs 2, 4, and 5;

c) in the alternative to (b), the entry of a declaratory judgment that paragraph 4 of the Agreement is unenforceable and void as a matter of public policy;

d) an award of costs and reasonable attorney's fees to the extent permitted by applicable statute or other law;

e) such other relief as the Court deems Plaintiffs may be entitled to in law and equity.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed.R.Civ.P. 38, Plaintiffs hereby demand trial by jury for all issues so triable.

        **CFGENOME, LLC and**
        **DR. M. ROHAN FERNANDO**

By:   */s/ Marnie A. Jensen*
       Marnie A. Jensen (#22380)
       Kamron T.M. Hasan (#25494)
       Husch Blackwell LLP
       13330 California St., Ste. 200
       Omaha, NE  68154
       Telephone: (402) 964-5000
       Fax: (402) 964-5050
       marnie.jensen@huschblackwell.com
       kamron.hasan@huschblackwell.com

       Richard R. Winter
       Steven E. Jedlinski
       Maureen B. Schoaf
       Holland & Knight LLP
       131 S. Dearborn St., 30th fl.
       Chicago, IL 60603
       Telephone:  (312) 263-3600
       Fax:  (312) 578-6666
       richard.winter@hklaw.com
       steven.jedlinski@hklaw.com
       maureen.schoaf@hklaw.com
       (subject to pro hac vice admission)

       *Attorneys for Plaintiffs*



## Employee Confidential Information, Inventions, and Non-Solicitation Agreement

I, the undersigned employee of Streck, in consideration of my employment or continued employment by Streck, acknowledge and agree as follows:

1. **PROTECTABLE RIGHT.** I understand that Streck is a manufacturer and distributor of quality control products for the clinical laboratory and that the technology of Streck's products, the associated business plans, and the customer goodwill are unique and valuable to Streck and constitute trade secrets and confidential information, which Streck has the right to protect.

2. **CONFIDENTIAL INFORMATION.** I, therefore, agree to hold in confidence, and not to disclose at any time during my employment, except on a need-to-know basis associated with my job duties, any Confidential Information of Streck. Further, I agree to hold in confidence and not to disclose at any time after my employment any Confidential Information of Streck unless I have express written permission from the President of Streck. I understand "Confidential Information" shall mean any and all information in any form (whether oral, written, magnetic, electronic, graphic or digitized) containing or consisting of information or material of a commercial, financial or technical nature or in the nature of intellectual property of any kind and relating (wholly or in part) to research, development, design, engineering, manufacture, operations or business affairs of or by the disclosing party and includes without limitation trade secrets, proprietary information, inventions (whether or not patentable), product design, product planning information, drawings, blueprints, value assigns, photographs, formulas, calculations, software, software and technology architecture, networks, computer access information, business methodologies, specifications regarding facilities, billing records, financial and operational information, prices, contracts, suppliers, customer lists, customer profiles, licenses, marketing or sales prospects, projected projects, know-how, techniques, and processes, and all copies, reproductions, notes, analyses, compilations, studies, interpretations, summaries and other documents whether or not prepared by me.

3. **INVENTIONS.** I hereby agree that I have made or will promptly make available a complete written disclosure to Streck describing all inventions, original works of authorship, developments, concepts, improvements, designs, know-how, discoveries, ideas, trademarks or trade secrets, whether or not patentable or copyrightable under copyright, trademark, or similar laws (collectively referred to herein as "Conceptions") that were made, conceived, first reduced to practice or created by me, either alone or jointly with others, prior to my employment with Streck.

4. **NEW INVENTIONS.** I hereby agree that I have made or will promptly make full written disclosure to Streck and hereby assign to Streck, or its designee, all of my right, title, and interest in and to any and all Conceptions which I solely or jointly conceive, develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the term of my employment with Streck, (collectively referred to herein as "New Inventions"), except as otherwise provided by applicable law. I also hereby agree to assign and do hereby assign to Streck, all of my right, title, and interest in and to any

HR400R6-4
Level IV
Effective Date: 03/26/12

Approval Signature on File

Page 1 of 3

Employee Confidential Information, Inventions and Non-Solicitation Agreement

EXHIBIT 1



Conceptions which I solely or jointly conceived, developed, or reduced to practice, or caused to be conceived or developed or reduced to practice in the one (1) year period following termination of my employment if such Conception is conceived, as a result of and attributable to the work done during my employment, relates to a method, substance, machine, article of manufacture, or improvements therein within the scope of business of Streck. For the purposes of this paragraph, New Inventions shall not include inventions that I develop entirely on my own time without using Streck's equipment, supplies, facilities, or Confidential Information, except for those New Inventions that either (i) relate at the time of conception or reduction to practice of the invention, to the Company's business or actual, anticipated or reasonably foreseeable research or development of the Company, or (ii) result from any work performed by me for the Streck invention. I will cooperate in the execution of all documentation (including but not limited to assignments of ownership rights, declarations / oaths, powers of attorney, etc) necessary to protect any intellectual property resulting from a new Invention or Discovery and/or effectuate any transfer of rights to Streck.

5. **NON-SOLICITATION OF CUSTOMERS, CLIENTS OR ACCOUNTS.** I acknowledge that my employment with Streck places me in a unique position in a highly competitive industry, as the technology of Streck's products, the associated business plans, and customer goodwill are unique and valuable to Streck and constitute trade secrets and confidential information, which Streck has the right to protect. I also acknowledge that I have/may develop a substantial relationship with Streck's prospective and existing customers. Therefore, I agree that for a period of twelve (12) months following the termination of my employment with Streck, I will not, directly or indirectly, for myself or others, contact, solicit, or accept business which involves the same or substantially similar products or services to those provided by Streck from, any customers, clients, or accounts, current or former, of Streck that I actually did business with and had personal contact with during my employment with Streck, unless I receive prior written approval from the President of Streck.

6. **NON-SOLICITATION OF EMPLOYEES.** I agree that for a period of twelve (12) months following the termination of my employment with Streck, I will not, directly or indirectly, for myself or others, contact or solicit any employee of Streck to leave the employ of Streck or to enter into an employment or independent contractor relationship with any other employer or entity.

7. **FORMER EMPLOYER INFORMATION.** I hereby agree that I will not, during my employment with Streck, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity for whom I have worked in the past, for whom I am now working or for whom I may work during the term of my employment with Streck, and that I will not bring onto the premises of Streck any unpublished document or proprietary information or property belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

8. **SCOPE OF AGREEMENT.** Continuance of employment is not made obligatory upon either party to this Agreement or a condition of this Agreement. Upon termination of



employment or at Streck's request, the undersigned employee will return any and all Streck property including copies of all printed or written material, formulas, computer programs, data and any other material of any nature pertaining to any Confidential Information or to my work with Streck. I will also not take any of the foregoing or any reproduction of any of the foregoing that is embodied in a tangible medium of expression.

9. **REMEDIES.** I acknowledge and understand that any violation of this Agreement will cause Streck immediate and irreparable harm which money damages could not adequately remedy. Therefore, upon any actual or impeding violation of this Agreement, I consent to the issuance by a court of competent jurisdiction of a restraining order, preliminary injunction and/or permanent injunction, without bond, restraining or enjoining such violation by me or any entity or person acting in concert with me, in addition to any other remedies which may be available to Streck.

I hereby acknowledge and represent to Streck that I have had an opportunity to review this Agreement and to ask Streck questions about it, and that I understand the meaning and effect of each section of this Agreement.

Dated: 11/27/13

_____
(Signature)

M. Rohan Fernando
(Printed Name)

Witnessed and accepted by Streck

By: Brad Hunsley

Title: Sr. Research Mgr.