Northwestern Journal of Technology and Intellectual Property

Volume 5
Issue 1 *Fall*

Article 3

Fall 2006

# Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute

Charles Tait Graves

Brian D. Range

Recommended Citation

Charles Tait Graves and Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68 (2006).
http://scholarlycommons.law.northwestern.edu/njtip/vol5/iss1/3

This Article is brought to you for free and open access by Northwestern University School of Law Scholarly Commons. It has been accepted for inclusion in Northwestern Journal of Technology and Intellectual Property by an authorized administrator of Northwestern University School of Law Scholarly Commons.

EXHIBIT
B

NORTHWESTERN
JOURNAL OF TECHNOLOGY
AND
INTELLECTUAL PROPERTY

# Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute

*Charles Tait Graves and Brian D. Range*




Fall 2006 VOL. 5, NO. 1

© 2006 by Northwestern University School of Law
Northwestern Journal of Technology and Intellectual Property

Copyright 2006 by Northwestern University School of Law
Northwestern Journal of Technology and Intellectual Property
Volume 5, Number 1 (Fall 2006)

# Identification of Trade Secret Claims in Litigation:

# Solutions for a Ubiquitous Dispute

By Charles Tait Graves and Brian D. Range [*]

## I. INTRODUCTION

¶1 Trade secret cases pose special problems distinct from other intellectual property lawsuits because alleged trade secrets are rarely defined in advance of litigation. For every patent, registered copyright, or trademark, there is a document filed with the federal government identifying the details and boundaries of the asserted intellectual property. But in trade secret cases, the plaintiff's attorneys typically develop the trade secret claims at the same time that they file a misappropriation suit against a former employee or business partner – or afterwards.

¶2 Trade secret plaintiffs rarely provide a precise and complete identification of the alleged trade secrets at issue without a court order requiring them to do so. This is a strategy, not an accident. The tactical advantages a plaintiff gains from non-identification are too tempting for a plaintiff to voluntarily provide such identification. In a typical case, the plaintiff has filed suit against a recently departed employee who joined or started a competing business, and then provide little more than a list of high-level, generic categories in which its alleged secrets are said to reside.

¶3 It is also common for a trade secret plaintiff to alter its list of trade secret claims as the case proceeds – sometimes dramatically, by replacing entire categories of information or technology, or by re-combining slippery, multi-element "combination trade secret" claims into new subsets. In a 2006 New Jersey case, for example, the plaintiff first identified four alleged secrets in an initial interrogatory response, then added six, later added thirty-nine in an expert report, then claimed ninety-two in a supplemental interrogatory response, and had its expert give what the court called "moving target" testimony about the alleged secrets.[1] We have seen many similar alterations during the course of cases in several jurisdictions, and defendants sometimes

---

[*] Charles Tait Graves and Brian D. Range are associates at Wilson Sonsini Goodrich & Rosati in San Francisco, California and Austin, Texas. This article is the fourth in a series that seeks to clarify frequently litigated but obscure areas of trade secret law, in the interest of protecting employee mobility and the right to use information in the public domain.

[1] *See, e.g.*, Civil Action No. 01-4677 (SRC) 2006 WL 1344084, at *1-3 (D.N.J. May 16, 2006) (acknowledging plaintiff's "moving target" allegations but holding that defense had sufficient opportunity to take discovery on shifting claims); Thomas & Betts Corp. v. Richards Mfg. Co., No. Civ. 01-4677, 2006 WL 902148, at *8-9 (D.N.J. Apr. 4, 2006) (barring some expert testimony).

spend months disproving one set of allegations only to face a new, replacement set as the close of discovery nears.

¶4 Precise identification of the alleged trade secrets is a crucial component of trade secret litigation. This is especially true when complex technology is at issue, but also in cases featuring simpler claims. Without a precise identification of software code elements, hardware architecture components, or even the names of allegedly secret customers, the defendant cannot compare the claims against public domain information to challenge the alleged secrecy of such information. It is difficult to conduct a public domain analysis if the claims are identified at only a generic level such as "source code," "ASIC design elements," or "customer lists." Stated differently, the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.

¶5 It is not surprising, then, that disputes over identification of the plaintiff's alleged trade secrets are common. However, it is notable that courts nationwide have not yet articulated a set of guidelines and standards to assist judges who must rule on identification questions. Indeed, courts in various jurisdictions have issued rulings on the same identification issues with almost opposite results – a majority requiring more identification, but a minority allowing the plaintiff to proceed with only general, conclusory descriptions of the alleged trade secrets. The published rulings indicate that courts subjectively reach their own conclusions, often with little or no reference to other published decisions. The problem is further exacerbated because courts rarely, if ever, quote precise descriptions of potentially valuable trade secrets in publicly available opinions, and thus most published opinions do not clarify the degree of specificity required.[2] As a result, the scattered case law in this area does not always serve as precedent, and it is difficult for parties to predict the result in any given case. The lack of a uniform set of guidelines invites trade secret plaintiffs to avoid identifying their alleged secrets in detail, because there is always a fair chance that the reviewing court will not require them to do so.

¶6 Despite the frequency of disputes over the identification of alleged trade secrets, the issue has received little scholarly attention.[3] Perhaps this is because the case law is scattered across multiple jurisdictions, in state and federal courts, without any unifying doctrine apart from citations to a few well-known cases. Most treatises refer to the problem in only general terms,[4] and a handful of practitioner-oriented articles note particular cases without a nationwide survey or detailed proposals.[5]

---

[2] *See* Savor, Inc. v. FMR Corp., No. Civ. A. 00C-10-149JRS, 2004 WL 1965869, at *6-7 (Del. Super`. Ct. Aug. 16, 2004) (redacting alleged trade secrets).

[3] The single full-length article we have found devoted to the identification question is Kevin R. Casey, *Identification of Trade Secrets During Discovery: Timing and Specificity*, 24 AIPLA Q.J. 191, 281 (1996) (summarizing case law and noting different stages of the case, but apparently recommending that "precise" detail need not be disclosed until trial; no specific focus on identification of different types of information). We disagree that identification should be withheld until trial, for reasons discussed below. The majority of the case law since 1996 supports our position.

[4] *See, e.g.*, RUDOLF CALLMANN, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 14:30 (4th ed. Supp. 2006) (briefly noting issue with citations); MELVIN A. JAGER, TRADE SECRETS LAW §§ 5:32, 9:8 (West 2006) (1985) (general description of some identification cases); ROGER M. MILGRIM, MILGRIM ON TRADE SECRETS §§ 15.01[1][d][i], 16.01[5][b] (Matthew Bender 2006) (1967) (general summary of issue and its importance with a few citations); ROBERT I. WEIL & IRA A. BROWN, JR., CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL § 8:58 (2006) (general description of

¶7 Given that most of the identification disputes on record have occurred in the past decade, the time is right for a detailed analysis of the identification problem. We believe that courts nationwide facing trade secret disputes should apply a recognized set of guidelines and standards to resolve disputes over the identification of alleged trade secrets in litigation. This would reduce unpredictable and inconsistent rulings, deter plaintiffs from strategically withholding information by gambling that any given court will not require a precise identification, and deter defendants from making the wrong demands as to identification at the wrong stage of the case. We believe that a proper standard would take into account the type of information being alleged as secret, the stage of the case, and the defendant's own diligence in raising the issue.

¶8 To that end, we have reviewed substantially all of the trade secret identification rulings available, including unpublished rulings and slip opinions, in order to paint a picture of how courts are reacting to similar arguments and disputes across the country. We will describe both outlier and mainstream opinions to illustrate why a set of common standards is needed.[6]

¶9 Yet merely summarizing holdings does not provide sufficient information to propose guidelines. Few courts have attempted to state rules of general applicability beyond the dispute at issue. Outlining the policy grounds supporting detailed identification of trade secret claims is therefore necessary. We will organize the discussion by the stage of the case, the type of information at issue, and the skill with which the defense has properly raised the issue. We will also offer solutions that courts can apply for the specific types of alleged secrets at issue in a given case.

¶10 In short, we offer five proposals as a standard for identification of alleged secrets in litigation:

---

California's Code Civ. Proc. sec. 2019.210). The most detailed existing commentary on the identification question is JAMES POOLEY, TRADE SECRETS § 11.02 (Supp. 2005). However, we respectfully disagree with the view expressed there that courts should not always require precise identification, especially during the discovery stage, because without precision the plaintiff has too easy an opportunity to continually alter its claims, and because plaintiffs who file multi-million dollar technology lawsuits are fully capable of providing such precision. Moreover, we have seen many cases where highly technical details were located in the public domain, and such research would have been impossible absent precision.

[5] *See, e.g.*, JOHN F. HORNICK & MARGARET A. ESQUENET, TRADE SECRET IDENTIFICATION OF TIMING IN DISCOVERY (2005), http://www.finnegan.com/publications/news-popup.cfm?id=1248&type=article (focusing on jurisdictions with pre-discovery requirements); Brent Caslin, *Secret Weapon: Understanding What Constitutes "Reasonable Particularity" Can Be the Decisive Element in Trade Secret Litigation*, L.A. LAW., Apr. 2004, at 44 (noting leading cases and advising defendants about various motions to file regarding an insufficient identification); York M. Faulkner & Margeret A Esquenet, *Putting an End to the Trade Secret Plaintiff's Game of Bait and Switch*, IP LITIGATOR, Sept. 2001, at 24-25 (noting problem and describing a few leading cases); Randy Kay, *Identifying Trade Secrets in Litigation - Managing the Process*, 28 NEW MATTER 1/2, Sept. 2003, 19-22 (noting problem and providing advice for plaintiffs and defendants); James R. Mckown, *Discovery of Trade Secrets*, 10 SANTA CLARA COMPUTER & HIGH TECH. L.J. 35, 47 (1994) (noting leading cases on identification disputes as of 1994 in article about procedural aspects of disclosing trade secrets in various litigation contexts); David R. Sugden, *C.C.P. Section 2019.210: A Sword, Not a Shield*, ORANGE COUNTY LAW., Mar. 2006, at 51-55 (advising defense counsel to take advantage of California's pre-discovery identification statute and use a plaintiff's failure to identify to move for summary judgment later in the case).

[6] Of course, rulings on most identification disputes take place on discovery calendars in trial courts and thus are never published, so a complete nationwide survey is not possible.

(1) Courts should first separate the question of whether the plaintiff has identified an alleged secret from the question of whether the information is, in fact, a trade secret;

(2) Courts should require a reasonably detailed identification of the alleged secrets before a plaintiff can proceed with discovery – a rule already required by statute in California, and by common law in several other states;

(3) Perhaps most importantly, if a defendant properly requests a precise identification during discovery, the court should require a precise, complete identification of whatever type of information is at issue – including an identification of alleged "combination trade secrets";

(4) No trade secret plaintiff should obtain an injunction or avoid summary judgment without a precise identification of alleged secrets;

(5) Trade secret plaintiffs should not be permitted to alter or amend an identification of trade secret claims without a showing of good cause.

¶11 These standards would remove the uncertainty that prevails in identification disputes. A trade secret plaintiff with a valid claim would have incentive to identify the alleged secrets early on, and a defendant who has misappropriated trade secrets could more easily be shown to have done so. A trade secret plaintiff with a meritless claim, however, would more easily be exposed. These standards would make it more difficult to sue former employees for harassment purposes and to spend them into the ground with protracted litigation, and more difficult to claim public domain information as trade secrets.

¶12 We believe that these proposals are equally applicable in jurisdictions which have enacted the Uniform Trade Secrets Act and those which follow the Restatement (Second) of Torts. Under both, a plaintiff must establish that the information at issue does, in fact, constitute trade secrets.[7] Requiring identification is a necessary case management tool to ensure that the parties and the court accurately understand what information is being asserted as secret in order to proceed to the secrecy question.[8]

¶13 This Article is primarily for courts ruling on identification questions, who must research the issue when parties file pleadings that cite only decisions that favor their positions, and who may need a single source for all of the nationwide case law. We believe that courts do not always realize the degree to which the identification of trade

[7] *See, e.g.*, CAL. CIV. CODE § 3426.1(d)(1) (West 2006) (California Uniform Trade Secrets Act provision defining trade secrecy); RESTATEMENT (SECOND) OF TORTS § 757 cmt. b (1979) (Restatement definition of trade secrecy).

[8] We note, however, that identification may not always matter in jurisdictions where a former employer can use contract law to bind former employees with non-competition covenants that bar use of non-secret material for some period after resignation. *See, e.g.*, Lason Serv., Inc. v. Rathe, No. Civ.A.3:02CV2110-D, 2003 WL 21728184, at *6 (N.D. Tex. Mar. 14, 2003) (rejecting defendant's argument that plaintiff failed to identify allegedly secret customers because non-solicitation covenant barring solicitation of customers was valid in jurisdiction and it was rrelevant whether customers were secret or non-secret); *Paper Mfg. Co. v. Weiss*, No. 1040, 1972 WL 15994, at *3 (Pa. Ct. Com. Pl. Mar. 13, 1972) (denying motion to require identification of alleged trade secrets given that plaintiff's claim was premised on restrictive non-competition contract valid in that jurisdiction, and thus plaintiff need not prove trade secrets to prevail).

secret claims is a lawyers' game, where one side holds back information and hopes that the opposing party will fail to raise the issue, or hopes that that a court will accept the argument that generic references to complex technology are sufficient.

¶14 This Article should also be of use to litigants, both to plaintiffs who have valid claims and seek to identify them in good faith and to defendants who lack the time or money to canvass the vast jurisprudence on identification, or who want to craft the best possible discovery requests to pin down a trade secret plaintiff and force a precise identification.

¶15 In what follows, we will describe the common mistakes that courts make when ruling on identification disputes, the problems that arise in the absence of a precise identification of trade secret claims, and how courts nationwide have ruled on identification disputes. We will then offer specific proposals for resolving identification questions.

## II. THE PROBLEM

¶16 A trade secret case usually begins shortly after a former employee has resigned and either joined a competitor or formed a new, competing business. The plaintiff files a lawsuit that accuses the defendant of misappropriating trade secrets, but the complaint contains only generalities about the nature of the alleged secrets. Once the parties have entered into a protective order that allows the confidential sharing of information between the parties and their attorneys,[9] the plaintiff sometimes issues a written statement that purports to identify the trade secret claims at issue, and sometimes provides such a statement as a discovery response. Because the statement rarely if ever identifies the alleged secrets with precision, a dispute over the specificity of the identification often arises within the first three months of the litigation. In other cases, the identification dispute arises later, when the plaintiff alters its claims or raises a new set of claims.

¶17 In the typical dispute over identification of alleged trade secrets, the defense argues that the plaintiff's list of categories and concepts is not specific enough, and then cites a scattering of cases that may not have been decided at the same stage of the case, that may not have addressed the same type of information, or that provided no real guidance on how much precision was required. The plaintiff, in turn, often responds by arguing that the defendant already knows what the alleged trade secrets are because the defendant knows what it stole, and thus no identification is necessary. The plaintiff will typically argue that a list of high-level concepts is sufficient and make selective citations to cases so holding, and it may also argue that because it alleges "combination" trade

[9] A protective order in a trade secret case usually creates a three-tier classification for information produced in discovery: material that is designated as non-confidential, material that is designated such that only the parties can view it and not the public, and material that only the attorneys and expert witnesses can view. The parties usually agree on terms allowing the individuals actually accused of misappropriating trade secrets to see the list of items they are accused of having stolen. In most cases, employees of the parties rarely see documents and other information produced by the other party, so there is little if any risk that one side will misuse information produced by the other.

secrets rather than individual trade secrets, no identification should be required.[10] Also, if the case is at an early stage, the plaintiff may argue that it cannot yet know every trade secret that was stolen and therefore cannot identify all trade secrets claims it may assert in the future.

¶18 Assessing an identification dispute can be difficult given the lack of uniformity in the published cases and the absence of a set of standards to which courts can look, especially in jurisdictions where trade secret lawsuits are less common.

### *A. Twelve Policy Considerations Relating to Vague Trade Secret Allegations*

¶19 The best place to begin is to step back from the facts of the case at issue and outline the policy reasons why requiring a detailed identification of the trade secret claims makes sense. We believe that there are at least twelve such considerations. Courts have cited some of these considerations when requiring identification, and we have come to recognize the others in the course of litigating scores of trade secret cases.

¶20 The first consideration is that the identification of an alleged trade secret can only come from the plaintiff, because there is no other pre-existing source one can look to for the details of the alleged intellectual property. Trade secrets are not listed claim-by-claim like patents or set forth in their entirety like registered copyrights or trademarks. There is no public source to which the defendant can look in order to determine what potential trade secrets the plaintiff possesses. The plaintiff's decision on what to claim as its trade secrets in litigation is a subjective one. Even if a former employee defendant could guess what trade secret claims the former employer might make, the specifics of the actual claim could differ from that speculation. On this point, it is important to note that the plaintiff's identification of its own alleged intellectual property does not depend on the defendant's documents, because the preliminary question is whether the plaintiff has a trade secret, which must be answered before determining whether the defendant used the secret in its products or services.

¶21 The second consideration is that requiring an early and precise identification of alleged trade secrets will encourage compliance with Federal Rule of Civil Procedure 11 and similar state rules governing frivolous pleadings. Such statutes and the Uniform Trade Secret Act all require that a trade secret plaintiff make allegations of misappropriation in good faith – either directly or through general rules against meritless accusations.[11] Any plaintiff's pre-lawsuit review of a potential trade secret matter should therefore consider whether the basic elements of the tort claim can be met, such as (1) the existence, in fact, of a trade secret; (2) the plaintiff's use of reasonable measures to maintain that secrecy; and (3) the defendant's misappropriation of one or more such secrets.[12] A plaintiff cannot adequately investigate these elements without internally identifying the trade secret claims under consideration. A vague identification of alleged trade secrets once the litigation has begun suggests that the plaintiff did not undertake a

---

[10] For a discussion of courts which have accepted this "combination trade secret" argument, see *infra* Section III.A.

[11] For example, California's version of the Uniform Trade Secrets Act provides remedies for bad faith trade secret claims, and the state also has a general statute governing frivolous pleadings. *See* CAL. CIV. CODE § 3426.4 (West 2006); CAL. CIV. PROC. CODE § 128.7(b) (West 2006).

[12] *See, e.g.*, CAL. CIV. CODE § 3426.1 (West 2006) (definitions of elements of a trade secret claim).

pre-lawsuit review. If parties know that identification will be required early in litigation, they have greater incentive to do a careful review before filing suit.

¶22 Third, and similarly, a lax identification standard could allow a party to avoid the statute of limitations. As one court noted on this point:

> These facts of cutting edge technological life, to say nothing of the limitations of language generally, have the effect of giving the person asserting trade secret claims in these kinds of cases, very wide definitional latitude, and, with that, considerable power to manipulate the articulation of claims for tactical purposes, e.g., to escape what might otherwise be a perfectly sensible application of the statute of limitations.[13]

¶23 The fourth consideration is that an exact identification is necessary to set the proper bounds and scope of discovery – the areas in which discovery will be permitted. Litigating parties often make and sell products outside the scope of the alleged trade secrets, and requiring a precise identification prevents burdensome and expensive discovery into irrelevant areas. Also, without a detailed identification, a plaintiff may later define its alleged secrets by first looking at the defendant's documents and then crafting claims that match those documents, but that do not match the plaintiff's own information.

¶24 The fifth consideration is that requiring a detailed identification early in a lawsuit may reduce future disputes over identification and thereby reduce the length of the discovery process. By contrast, a plaintiff who identifies the claims only later may cause new rounds of depositions and other discovery as the parties scramble to assess the newly-provided information. Knowing the claims early allows for a focused and efficient discovery plan from the start, and thus serves as a useful case management tool.

¶25 The sixth consideration is that without a precise identification, the defense lacks the information it needs to conduct public domain research and challenge the alleged secrecy of the information at issue. Seventh, and for the same reasons, the reviewing court cannot rule on a secrecy claim with accuracy and confidence if the exact parameters of the information remain unclear. Without details, who can be sure that the alleged secret has not been published elsewhere, by a market competitor, an engineering publication, or in academic work?

¶26 The eighth consideration is that requiring a precise identification prevents a plaintiff from making overbroad secrecy claims encompassing vast categories of information. Plaintiffs sometimes use the trade secret claim as a sort of non-competition covenant by listing wide areas of technology that encompass the former employee's entire set of skills, knowledge, and experience. Ninth, and on a related point, a defendant cannot formulate its arguments for differentiating its technology from the alleged trade secrets at issue without knowing precisely what those trade secrets are. For example, a former employee may well have worked in good faith to ensure that software written for a subsequent employer would not copy or otherwise make use of the former employer's

---

[13] Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 656 (N.D. Cal. 1993) (regarding trade secret statute of limitations under California's UTSA).

non-public information, but cannot make that distinction if the plaintiff asserts only general functionalities common to that general type of software.

¶27 The tenth consideration is that expert reports from both sides will be more useful and focused if the exact nature of the alleged secrets is known before they begin their work. Without an exact identification, the plaintiff's expert may simply declare that broad areas of technology are trade secrets, without actually conducting specific public domain research that could support a valid scientific opinion. Meanwhile, the defense experts may be forced to spend a great deal of effort researching and opining on wider areas of technology than are at issue, without being able to focus on the exact technology the plaintiff claims as intellectual property.

¶28 The eleventh consideration is that the trade secret plaintiff should not be able to unilaterally alter and amend its claims without judicial review as the lawsuit proceeds. Too many trade secret cases feature a kaleidoscope of amorphous, frequently-altered claims that prevent the defense from pinning down and defeating any solid set of claims. Requiring an early and precise identification of alleged secrets can make attempts at unsupervised alteration apparent. By contrast, a broad and non-specific list of concepts and categories allows a plaintiff to alter the details of the claims in a manner more likely to escape judicial review.

¶29 Finally, and perhaps most broadly, requiring a detailed identification protects employees' interests in moving to the jobs of their choice and using public domain information, as they have a right to do. When a plaintiff makes vague trade secret claims against a former employee without narrowly defining the actual items at issue, it is essentially requesting a court-created non-competition agreement against the defendant.[14] Such claims cut into the former employee's general right to take non-secret knowledge, skills, and experience from job to job.[15] But when discovery focuses only on detailed clams susceptible to examination and study, there is less risk that these important public policy interests will be encroached upon.

¶30 At the same time, we do not agree with all of the policy grounds that courts have given for requiring a detailed identification of alleged trade secrets. Some courts and commentators have asserted that identification is needed to prevent a malicious plaintiff from filing suit for the purpose of getting into the defendant's own information and taking the defendant's trade secrets.[16] While we have learned from experience that

---

[14] It should be noted that an employee seeking to act in good faith may have no affirmative ability to obtain a specific list of potential trade secrets in order to avoid using them. In *Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39, 40 (Tex. Ct. App. 1995), a former employee sought a declaratory judgment that would force his former employer to list any trade secrets that it contended the former employee could not utilize in his new job. The court held the issue was not justiciable because the former employee had "not invented, and may never invent, anything that is of concern to Baxter." *Id.* at 42. Thus, the former employee's attempt to use a declaratory judgment action to determine how he could fairly compete with his former employer failed.

[15] The concept that former employees are free to use general skills, knowledge, and experience is well established. *See, e.g.*, Winston Research Corp. v. Minn. Mining & Mfg. Co., 350 F.2d 134, 143-144 (9th Cir. 1965) ("[plaintiff's] former employees cannot be denied the right to use their general skill, knowledge and experience, even though acquired in part during their employment by [plaintiff]); Eaton Corp. v. Appliance Valves Corp., 526 F. Supp. 1172, 1180 (N.D. Ind. 1981) ("the general knowledge and skill obtained by an employee during his employment belongs to that employee and can be utilized by him after terminating his employment"), *aff'd*, 688 F.2d 842 (7th Cir. 1982).

[16] *See, e.g.*, Computer Econ., Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999)

attorneys are willing to assist their clients by altering claims and by not defining claims, we believe that it is less likely that a law firm would assist a client's scheme to take information from a competitor by filing a lawsuit against the competitor and turning over information produced in discovery and designated as confidential under a protective order. We believe that courts should avoid relying on this purported basis for requiring an identification, and focus instead on the real problems caused by non-identification.

### *B. Mistakes Courts Make When Ruling on Identification Questions*

¶31 Reflecting on these policy considerations should assist courts in making a ruling appropriate to the case at issue, and in avoiding the mistakes courts sometimes make when deciding identification questions.

¶32 Several such mistakes merit special attention. To begin with, a tiny minority of courts have nullified the identification requirement altogether, refusing to require a trade secret plaintiff to identify the trade secret claims even in the face of the defendant's discovery requests or controlling law in the jurisdiction. As one example, a California trial court sanctioned a trade secret defendant in a 2006 case for not providing discovery after the plaintiff failed to serve a trade secret identification statement, and it took an appeal to reverse the sanctions – even though California has a statute requiring that a trade secret plaintiff provide a reasonably particular identification of alleged secrets before pursuing discovery.[17] In another case, a Massachusetts court repeatedly rejected the defendant's efforts to learn the details of the alleged secrets.[18]

¶33 Rulings like these are outliers. But three other mistakes that courts make are more common, and perhaps less obvious. One is not recognizing that the identification of the trade secret claims is a separate issue distinct from whether the information at issue is secret, because that identification is a necessary preliminary step leading to the secrecy analysis. In such cases, courts conflate identification questions with the secrecy question, confusing the discussion.[19]

---

(identification "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets."); Data General Corp. v. SCI Sys., Inc., Civ. A. No. 5662, 1978 WL 22033, at *1 (Del. Ch. Nov. 27, 1978) (identification serves to prevent the plaintiff from going through the defendant's information to gain "an unfair business advantage."); WEIL & BROWN, *supra* note 4, at § 8:58 (claiming that purpose of California's identification statute is "to prevent plaintiff from conducting 'fishing expeditions' into competitors' business files by unfounded claims of trade secret misappropriation.").

[17] *See* Roup v. Super. Ct., No. B188652, L.A.S.C. No. BC328972, 2006 WL 710891, at *1 (Cal. Ct. App. Mar. 22, 2006) (unpublished).

[18] *See, e.g.*, Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc., No. Civ.A. 02-12102-RWZ, 2005 WL 283200, at *1 (D. Mass Feb. 7, 2005) (referring to unspecified "rules" when refusing again to require detailed identification: "CHE objects to the Master's denial of yet another attempt to gain detailed identification of Storage Tech's copyright and trade secret claims. Much of what the Master rejected, the court had previously ruled out of order, or Storage Tech had in the interim supplied. The rules do not sanction the degree of detail CHE seeks to extract."); Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc., No. Civ.A. 02-12102-RWZ, 2003 WL 22462494, at *1 (D. Mass Oct. 30, 2003) (on pre-discovery order in software case, rejecting defendant's attempt to find out exactly what source code was claimed as secret: "Defendant proposed that plaintiff provide a detailed list of the trade secret allegedly misappropriated to which plaintiff objects. This appears to be another request for the identification of each line of the maintenance source code implicated in these proceedings. I remain unpersuaded that defendant is either entitled to discover that level of detail or that such is necessary to mount an adequate defense.").

[19] *See, e.g.*, Excelligence Learning Corp. v. Oriental Trading Co., No. 5:03-CV-4947 JF (RS), 2004 WL

¶34 The second mistake is assuming that descriptions of technical categories and concepts such as "source code" or "placement of capacitors in the schematic for the ABC project" are sufficient to identify alleged secrets – perhaps because courts do not always recognize how much public domain information exists in such broadly defined technical categories. We will describe several such rulings below.

¶35 The third common mistake, and perhaps the worst, is accepting a plaintiff's argument that because "combination trade secrets" are claimed, the plaintiff need not make a precise identification of such alleged secrets. A "combination trade secret" is a multi-element claim that, when valid, ties non-secret items of information together in a unique manner to form a trade secret. The concept is dangerous, however, because trade secret plaintiffs often string together non-secret items that have no functional interrelationship to avoid a defendant's showing that the individual items are non-secret. Attorneys also use the "combination" concept to alter claims, and to create more sets of alleged intellectual property than the plaintiff ever actually thought about or linked together. But combination claims can fail for a number of reasons, just as individual trade secret claims can, and thus they should not provide a shield against identification.[20]

¶36 Trade secret plaintiffs use the "combination" argument during identification disputes to confuse courts and escape a precise identification of the alleged secrets. If a defendant argues for a precise identification, the plaintiff will often respond that it claims "combination" secrets in an "entire process" rather than individual secrets, and that identifying individual elements should therefore be unnecessary. Or, to the same effect, the plaintiff argues that its secret is its entire base of software source code, its entire chip design, and so forth, without regard to identifying what exactly about those broad categories are asserted as an allegedly misappropriated secret.

¶37 The "combination" concept can create a major loophole for a plaintiff seeking to avoid identification. Perhaps most dangerous, a plaintiff can use the "combination" theory to alter and revise its claims in different mixes of subsets, to gerrymander a claim so that the defense cannot focus its research efforts on defeating the final version. If we take, for example, seven software algorithms and assume that five are in the public domain, the plaintiff might alter the claim several times to create subsets of the seven where at least one of the included algorithms is secret, in order to claim the non-secret algorithms as secret as well. With a simple set of seven, there is a multiplicity of mathematically possible variations of subsets of two or more elements. Of course, the

---

2452834, at *3-4 (N.D. Cal. June 14, 2004) (reviewing whether plaintiff's Cal. Civ. Proc. Code. sec. 2019.210 identification statement was sufficient and asking whether the information was secret instead of whether identification was sufficiently specific); Momswin, L.L.C. v. Lutes, No. Civ.A. 02-2195-KHV, 2003 WL 21554944, at *7 (D. Kan. July 8, 2003) (denying plaintiff's motion for summary judgment for failure to establish conclusively that information was secret, but seemingly conflating identification requirement with secrecy requirement in discussion); Lovell Farms, Inc. v. Levy, 641 So. 2d 103, 105 (Fla. Ct. App. 1994) (affirming denial of request for temporary restraining order and requiring that plaintiff first show existence of trade secret; seemingly blending an identification requirement and proof of secrecy through an in-camera review procedure); Gabriel Int'l, Inc. v. M&D Indus. of Lou., Inc., 719 F. Supp. 522, 524-25 (W.D. La. 1989) (in confusing ruling, court required that a trade secret plaintiff prove the existence of a secret early in the lawsuit, apparently before seeking third party discovery, but in so doing appears to have conflated the need to identify the alleged secrets with the ultimate proof of secrecy or non-secrecy).

[20] For a detailed description of "combination trade secret" claims and citations to numerous cases where such claims have failed, see Tait Graves & Alexander Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 SANTA CLARA COMPUTER & HIGH TECH. L.J. 261 (2004).

algorithms may not in reality interoperate together, and perhaps should properly be defined as individual trade secret claims rather than "combination" claims. But without requiring a precise identification of the "combination" trade secret at issue, the defense may be unable to raise that argument. Courts need to be aware of this common litigation tactic and nail down exactly what permutations and subsets are actually claimed as secret.

¶38 But all too often, courts have confused the question of (1) whether the plaintiff claims "combination" secrets instead of individual secrets with (2) whether the plaintiff should be required to precisely identify its alleged trade secrets regardless of whether they are claimed in combinations or individually.

¶39 There are several published rulings where courts have failed to require a precise identification of the alleged secrets as a result of conflating these two issues.[21] In one, a plaintiff vaguely claimed secrets somewhere within 500 pages of materials, and the defendant argued on appeal after a jury verdict that the plaintiff did not specify what the secrets were. The court merely noted that a plaintiff can have a combination trade secret in material that includes elements that are individually non-secret, and did not ask whether any such combination had been properly identified.[22] And in one of the most questionable trade secret rulings on record, a Pennsylvania district court rejected a defendant's identification argument by holding that the plaintiff's set of generalized business concepts for running a tanning salon was an "entire methodology" that added up to form a trade secret, without any specific identification. By avoiding the identification analysis and stringing together vague business concepts into a combination trade secret, the decision essentially created a non-competition agreement and held the defendant liable for violating it.[23] Of course, a plaintiff certainly is capable of properly identifying an alleged combination trade secret.[24] Indeed, many courts have required precise identification of "combination trade secrets." We will discuss those cases below when proposing solutions.

¶40 With these policy considerations and common mistakes in mind, we will survey the nationwide case law, and then offer specific proposals for addressing identification disputes.

---

[21] Courts sometimes sidestep the identification question by accepting a plaintiff's argument that its entire process or software was at issue. *See, e.g.*, Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 662 (4th Cir. 1993) (refusing to overturn jury verdict despite plaintiff's failure to identify precise secrets, and affirming on questionable ground that entire object code software was secret without addressing whether any secrets were identified in the functionality or other aspects of the executable software; even with finalized object code, we believe that a plaintiff should identify what about the software is not generally known to the trade); Touchpoint Solutions, Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 28-29 (D. Mass. 2004) (granting in part plaintiff's motion for preliminary injunction despite defendant's argument that plaintiff had not specifically identified alleged secrets; court accepted plaintiff's characterization of "source code, implementation, overall design and 'distributed computing model'" as a design that was "unique, complex, and apparently valuable" without focusing on whether specific details had been identified).

[22] *See* 3M Co. v. Pribyl, 259 F.3d 587, 595-96 (7th Cir. 2001).

[23] *See* Tan-Line Studios, Inc. v. Bradley, Civ.A. No. 84-5925, 1986 WL 3764, at *7 (E.D. Pa. Mar. 25, 1986) (ruling following bench trial; referring to general definition of a combination trade secret).

[24] *See* Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 432 n.7 (3d Cir. 1982) (plaintiff claimed combination trade secret in chemical process and "did put in evidence detailed descriptions of the Process," though specificity unclear from published decision).

## III. How Courts Nationwide Have Addressed Identification Disputes

¶41 There are several stages of a case where courts face disputes over the identification of alleged trade secrets: the pleading stage, on a request for a temporary restraining order or preliminary injunction, just before discovery begins, during discovery, on a motion for summary judgment, during trial, and after trial.

¶42 For the most part, the majority trend is to require a detailed identification of alleged secrets – particularly on a request for an injunction, during discovery, and on a motion for summary judgment. Rulings are inconsistent at the pleading stage, probably because of liberal notice pleading requirements. In turn, rulings after trial often go against the defendant, likely because the defense waited too long to raise the identification issue and, more importantly, because courts are loath to overturn jury verdicts.

### *A. The Pleading Stage*

¶43 In some cases, trade secret defendants have moved to dismiss the complaint, or to obtain a more definite statement, when the plaintiff is vague regarding the alleged secrets. Some courts have required more information at the pleading stage,[25] though plaintiffs obviously need not disclose material believed to be secret in a public complaint, and liberal notice pleading standards often mean little is required.[26] As one court explained the general rule, "courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation . . . . The query is whether

[25] *See, e.g.*, Metis Int'l, L.L.C. v. Ace INA Holdings, Inc., No.Civ.A.SA.04CA-1033-XR, 2005 WL 1072587, at *5 (W.D. Tex. May 6, 2005) (granting Rule 12(e) motion and requiring plaintiff to plead more about the categories of alleged secrets being claimed); Cambridge Internet Solutions, Inc. v. Avicon Group, No. 99-1841, 1999 WL 959673, at *2 (Mass. Ct. App. Sept. 21, 1999) (granting in part motion for a more definite statement where plaintiff alleged that some alleged secrets where in specific document, but did not do so for alleged "customer material" secrets); Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968) (sustaining demurrer to third amended complaint where plaintiff failed to provide more than highly generalized description of alleged secrets; "the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."); AMP, Inc. v. McCaughey, 38 Pa. D. & C.2d 109, 118 (Pa. Ct. Cm. Pl. 1966) ("In requiring a more specific pleading, we are not indicating that plaintiff must plead trade secret processes, trade secrets, or the like. However, it is apparent that plaintiff can provide defendants with at least an identification and nature of the products, persons, time and places involved, so as to permit them to know that against which they are to prepare a defense.").

[26] *See, e.g.*, Automed Tech., Inc. v. Eller, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (general references to categories of alleged secrets sufficient to withstand motion to dismiss, but "plaintiff will ultimately need to identify which specific designs, software or research defendant allegedly misappropriated."); Kosower v. Gutowitz, No. 00 Civ. 9011(JGK), 2001 WL 1488440, at *8 (S.D.N.Y. Nov. 21, 2001) (general references to claimed secrets permissible because facts as alleged must be treated as true; motion to dismiss denied); Labor Ready, Inc. v. Williams Staffing, L.L.C, 149 F. Supp. 2d 398, 411 (N.D. Ill. 2001) (denying Rule 12(e) motion because general identification of alleged secrets met notice pleading standards; noting that more would be required at the summary judgment stage;); Cinebase Software v. Media Guaranty Trust, Inc., No. C98-1100 FMS, 1998 WL 661465, at *7-8 (N.D. Cal. Sept. 22, 1998) (on motion to dismiss, identification "in general terms" sufficed, but "plaintiff will have to identify its alleged trade secrets with much greater particularity in order to prevail on this claim"); Savor, Inc. v. FMR Corp., No. CIV.A. 00C-10-249JRS, 2002 WL 393056, at *4 (Sup. Ct. Del. Mar. 14, 2002) (dismissing third amended complaint with prejudice where plaintiff did not provide any detail for allegedly misappropriated trade secrets, even though complaint filed partially under seal and plaintiff pointed to attached documents, claiming "whole process" as secret), *rev'd*, 812 A.2d 894, 897 (Del. 2002) (reversing based on liberal pleading standards).

the allegations provide the defendant with notice as to the substance of the claims."[27] In some cases where courts have required more detail in a complaint, it is unclear whether the amended complaint would be filed under seal, though it would seem that a confidential or redacted filing would be appropriate.[28]

### *B. Requests for Injunctive Relief*

¶44 Many trade secret cases begin with a rushed request for a temporary restraining order or preliminary injunction. At that stage, trade secret plaintiffs sometimes make only vague references to the alleged secrets, without providing details. As a result, courts have repeatedly used the identification requirement as a ground to deny the request.[29] Given the courts' general reluctance to enjoin a defendant's

---

[27] *See* Dick Corp. v. SNC-Lavalin Constr., Inc., No. 04 C 1043, 2004 WL 2967556 (N.D. Ill. Nov. 24, 2004) (on motion to dismiss and for a more definite statement, general reference to "Joint Venture Data" sufficed).

[28] *See* Combined Metals of Chi. Ltd. Part. v. Airtek, Inc., 985 F. Supp. 827, 832 (N.D. Ill. 1997) (to prevent cross-plaintiff from modifying claims later, and to provide fair notice, court ordered party to identify "specific, concrete secrets" in amended cross-complaint).

[29] *See, e.g.*, MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 522-23 (9th Cir. 1993) (reversing preliminary injunction in part where plaintiff failed to "specifically identify" alleged secrets claimed to reside within a "diagnostic software and operating system"); Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 956 (Fed. Cir. 1984) (applying apparent federal common law to affirm denial of preliminary injunction where, among other things, "Litton's Achilles Heel on this record is its insistence on postponing identification or description of such a broad universe of *thousands* of unidentified trade secrets"); Cataphote Corp. v. Hudson, 422 F.2d 1290, 1296 (5th Cir. 1970) (noting that trial court had correctly denied earlier permanent injunction request because plaintiff had no first "specifically identified and proved" its alleged secrets); Internet Inc. v. Tensar Polytech., Inc., No. Civ. 05-317RHKAJB, 2005 WL 2453170, at *6 n.8 (D. Minn. Oct. 3, 2005) (denying request for preliminary injunction when, inter alia, plaintiff did not "identif[y] specific products that have been successfully modified with the use of information from Brand, much less with the use of specific information alleged to be Internet's trade secrets"); Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc., 370 F. Supp. 2d 1339, 1346 (N.D. Ga. 2005) (denying motion for preliminary injunction when plaintiff claimed secrets in dry hub carriage for sootblower cleaning system but could not identify specific items claimed as trade secrets); Hypred S.A. v. Pochard, No. Civ.04-2773(JNE/JGL), 2004 WL 1386149, at * 5 (D. Minn. June 18, 2004) (rejecting trade secret portion of requested preliminary injunction because plaintiff failed to identify specific alleged secrets and claimed only generic categories of "product formation and manufacturing secrets"); Vital State Can., Ltd. v. Dreampak, LLC, 303 F. Supp. 2d 516, 521-23 (D.N.J. 2003) (denying preliminary injunction where plaintiff identified "overbroad and vague" technology categories, and repeatedly "shifted" its attempted identifications); Compuware Corp. v. IBM, No. 02-CV-70906, 2003 WL 23212863, at *6-7 (E.D. Mich. Dec. 19, 2003) (rejecting motion for preliminary injunction where plaintiff claimed secrets in "unique combination of functions and capabilities" in certain software, "customer preferences," product documentation, and source code; court rejected claims, noting "As for its source code, Compuware has for whatever reason failed to identify any specific lines of source code that have been taken by IBM."); Motorola, Inc. v. Dbtel Inc., No. 02 C 3336, 2002 WL 1610982, at *16-17 (N.D. Ill. July 22, 2002) (plaintiff offered somewhat detailed testimony making general claims about several aspects of its technology, but court found that evidence "confusing, inconsistent, and lacks specificity;" court was unable to tell what exactly plaintiff wanted to enjoin, particularly where "many aspects of Motorola's process for creating a cellular phone involve publicly available equipment and standards," and refused to issue injunction); FSI Int'l v. Shumway, No. CIV.02-402RHKSRN, 2002 WL 334409, at *9 (D. Minn. Feb. 26, 2002) (same where plaintiff sought temporary restraining order but offered only generalized categories instead of identifying alleged secrets); Newleaf Designs, L.L.C v. Bestbins Corp., 168 F. Supp. 2d 1039, 1043-44 (D. Minn. 2001) (same where plaintiff failed to identify several alleged secrets); Am. Sci. & Eng'g Inc. v. Kelly, 69 F. Supp. 2d 227, 238 (D. Mass. 1999) (preliminary injunction denied where plaintiff failed to identify alleged secrets in collimator device); Visionair, Inc. v. James, 606 S.E.2d 359, 364 (N.C. Ct. App. 2004) (affirming denial of request for preliminary injunction where plaintiff "has failed to identify

employment or business on an expedited proceeding without a careful review of the evidence, it is not surprising that plaintiffs' failures to identify the information at issue provides a ready reason for a denial.

¶45 Of course, some trade secret plaintiffs do provide a sufficient identification of their claims when seeking injunctive relief.[30] Indeed, one would expect that in egregious cases – where, say, a former employee downloaded key non-public files the day before resigning – a plaintiff should easily be able to make a precise identification of the alleged secrets to support its request.

¶46 At least one court has required little identification on a request for injunctive relief. That court held that "source code" was a sufficient identification on a request for a preliminary injunction, and attacked the defendant for considering its own software to be confidential while also seeking a better identification of the plaintiff's claim.[31] The court may have conflated the separate considerations of whether or not alleged trade secret is truly secret and whether or not the plaintiff adequately identified the alleged trade secret,

---

with any specificity the trade secrets allegedly misappropriated, mentioning only broad product and technology categories."); IBM Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 100 (D. Minn. 1992) (same where plaintiff admitted that its descriptions of alleged disk drive secrets "do not purport to define precisely the boundaries of each trade secret."); CVD, Inc. v. Raytheon Co., Civil Action No. 81-2216-S, 1981 WL 2162 (D. Mass. Dec. 3, 1981) (request denied where plaintiff failed to identify alleged secrets); Lee Pharms. v. Den-Mart, Inc., 1976 WL 21026 (C.D. Cal. 1976) (somewhat confusing early case where court delayed hearing on requested preliminary injunction in part because plaintiff had refused to identify alleged secrets); Analog Devices, Inc. v. Michalski, 579 S.E.2d 449, 453-54 (N.C. Ct. App. 2003) (affirming denial of motion for preliminary injunction where plaintiff claimed combination trade secret in chip designs, submitted documents and schematics, and listed general concepts such as "the overall design and implementation of Analog's 94xx products"; Court stated "Analog invites this Court to acknowledge the existence of trade secrets in the submitted information without bearing the burden of identifying those trade secrets. We will not read into Analog's claims specific identification of devices worthy of trade secret protection when it is Analog's burden to come forward with evidence of such devices."); Grow Co., Inc. v. Chokshi, 2006 WL 551367, at *4 (N.J. Super. Ct. Mar. 3, 2006) (unpublished) (motion to reconsider denial of preliminary injunction denied where plaintiff "fails to specifically identify a trade secret" in "processes and formulations"); Iron Age Corp. v. Dvorak, 880 A.2d 657, 665-66 (Pa. Ct. App. 2005) (denying preliminary injunction based on "inevitable disclosure"-type theory denied, in part because plaintiff failed to identify allegedly confidential information at issue); Southwest Research Inst. v. Keraplast Tech., Ltd., 103 S.W.3d 478, 483 (Tex. Ct. App. 2003) (vacating temporary restraining order where plaintiff "failed to identify any specific trade secret that should be protected," and instead broadly claimed that everything defendant learned from plaintiff was secret).

[30] *See e.g.*, Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 1453 (2002) (holding that plaintiff sufficiently identified alleged secrets during request for temporary restraining order though combination of generic categories and "descriptions made pursuant to" California Code of Civil Procedure section 2019.210 and other pleadings; published opinion did not quote from the latter documents, no doubt to preserve the claimed secrecy, thus leaving unclear what level of precision was supplied); Lowell Anderson, *Litigation Issues, in* TRADE SECRETS PRACTICE IN CALIFORNIA § 11.21 (2d ed. Supp. 2005) ("Unfortunately for practitioners seeking guidance on §2019(d), the court based its ruling in part on information contained in the plaintiff's §2019(d) statement, which was not disclosed in the published opinion."). At least two subsequent federal cases have incorrectly assumed that *Whyte* stood for the proposition that California's section 2019.210 allows identification by generic categories – though the subsequent *Advanced Modular Sputtering* case, discussed below, mooted the question by setting forth the California standard. *See, e.g.*, Pixion, Inc. v. Placeware, Inc., 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005); Excelligence Learning Corp v. Oriental Trading Co., Inc., No. 5:03-CV-4947 JF (RS), 2004 WL 2452834, at *3-4 (N.D. Cal. June 14, 2004).

[31] *See* Cisco Sys., Inc v. Huawei Tech., Co., 266 F. Supp. 2d 551, 555-56 (E.D. Tex. 2003) (granting preliminary injunction; no sign in published opinion that plaintiff provided specific identification of alleged software code trade secrets).

because it did not provide a separate analysis for identification and then secrecy in sequential order.

¶47 An issue related to injunctive relief is whether the court itself properly identifies the alleged secrets in the order so that the defendant knows exactly what it is forbidden from using. Some appellate courts have reversed orders for injunctive relief on this basis.[32] It stands to reason that if a trade secret plaintiff fails to provide a precise identification of its alleged secrets, a court will not be able to issue an appropriately specific order against the defendant.

### *C. The Pre-Discovery Stage*

¶48 If a defendant does not challenge the specificity of the complaint, and if the plaintiff does not seek immediate injunctive relief, the next phase of the case where identification disputes arise is the moment when the plaintiff seeks to commence discovery on its trade secret accusations. Several jurisdictions have required that trade secret plaintiffs make at least a "reasonably particular" identification of their alleged secrets as a condition precedent to seeking discovery from the defendant. In those jurisdictions, pre-discovery identification disputes are common.

¶49 Courts in several states (or federal courts applying state law) have required a pre-discovery identification procedure by common law: Delaware,[33] Illinois,[34] Massachusetts,[35] Minnesota – which requires the most detail[36] – and possibly Florida.[37]

---

[32] *See, e.g.*, Corning Inc. v. Picvue Elec., Ltd., 365 F.3d 156 (2d Cir. 2004) (remanding where trial court's preliminary injunction was too vague under FRCP Rule 65; impossible to tell from order what information was subject of the injunction); Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (two post-judgment inunctions overbroad under Rule 65(d) for failure to specify exactly what information was barred from use); American Can Co. v. Mansukhani, 742 F.2d 314, 333 (7th Cir. 1984) (reversing preliminary injunction in part because order was too vague under Rule 65(d); order barred used of "compositionally similar" inks which could be "attributed principally" to the plaintiff's trade secrets without identifying precisely what was barred); E.W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1114-15 (8th Cir. 1969) (setting aside preliminary injunction where order was "excessively broad" under FRCP 65(d) and listed only high-level technical categories instead of specifying exactly what information was subject of injunction); Microstrategy, Inc. v. Business Objects, S.A., 331 F. Supp. 2d 396, 431 (E.D. Va. 2004) (in post-trial, permanent injunction following finding of misappropriation, plaintiff's proposed injunction "too broad" in scope; limiting injunction to "specific documents identified as trade secrets").

[33] *See, e.g.*, Leucadia, Inc. v. Applied Extrusion Tech., Inc., 755 F. Supp. 635, 637 (D. Del. 1991) (denying discovery against defendant because plaintiff's statement too high-level); Miles Inc. v. Cookson Am., Inc., Civ. A. No. 12,310, 1992 WL 136381, at *1 (Del. Ch. June 16, 1992) (unpublished) (statement generally outlining alleged secrets insufficient to take discovery against defendant); Magnox v. Turner, Civ. A. No. 11951, 1991 WL 182450, at *1 (Del. Ch. Sept. 10, 1991) (unpublished) (same where plaintiff served discovery without first making identification of alleged secrets with reasonable particularity); Engelhard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del. Ch. 1986) (same where plaintiff failed to make required statement with reasonable particularity); Data Gen. Corp. v. SCI Sys., Inc., Civ. A. No. 5662, 1978 WL 22033, at *2 (Del. Ch. Nov. 27, 1978) (unpublished) (early case allowing defendant to file papers with court stating which alleged secrets in plaintiff's identification it was "unable to comprehend" in order to rule on motion for protective order).

[34] *See* Automed Tech., Inc. v. Eller, 160 F. Supp. 2d 915, 925-26 (N.D. Ill. 2001) (citing Delaware law to hold that plaintiff must identify alleged secrets with "reasonable particularity" before taking discovery "so that we can evaluate the relevance of plaintiff's discovery and address any objections.").

[35] *See* L-3 Comm. Corp. v. Reveal Imaging Tech., Inc., 2004 WL 2915743, at *13 (Mass. Sup. Ct. Dec. 2, 2004) (holding that plaintiff must specifically identify alleged secrets before commencing discovery). This decision is only an unpublished trial court order, however, so the status of pre-discovery identification remains unclear in Massachusetts.

In addition, a federal court in New York has addressed a defendant's argument that the plaintiff should not be able to start discovery on the trade secret claim without first making an identification of the alleged secrets by sending the dispute to a discovery master, but it did not attempt to craft a rule of general application to other cases.[38]

¶50 California is the only state to codify a pre-discovery identification rule by statute.[39] California's legislature enacted what is now Code of Civil Procedure section 2019.210 in 1985 as part of the state's Uniform Trade Secrets Act. The impetus for the statute came from a state bar memorandum to the state legislature proposing the text of the statute and noting the discovery abuses that trade secret plaintiffs often engage in when they fail to identify the alleged secrets:

> One area not addressed by the Uniform Act is the area of plaintiff's abuse in initiating trade secret lawsuits for the purpose of harassing or even driving a competitor out of business by forcing the competitor to spend large sums in defending unwarranted litigation. For example, when a plaintiff's employee quits and opens a competing business, a plaintiff often files a lawsuit for trade secret misappropriation which states that the defendant took and is using plaintiff's trade secrets, but does not identify the trade secrets. The plaintiff can then embark upon extensive discovery which the new business is ill equipped to afford. Furthermore, by not informing the defendant with any degree of specificity as to what the alleged trade secrets are, defendant may be forced to disclose its own business trade secrets, even though those matters may be irrelevant, and the defendant may not learn the exact nature of the supposedly misappropriated trade secrets until the eve of trial.[40]

¶51 Courts and commentators have identified a number of salutary policy goals California's statute serves,[41] though again we do not agree with all of them and find their

---

[36] *See* Porous Media Corp. v. Midland Brake, Inc., 187 F.R.D. 598, 600 (D. Minn. 1999) (where plaintiff described only six high-level concepts, court held that trade secret plaintiffs must provide an identification with "the same specificity" required on a motion for preliminary injunction or at trial; "The orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation.").

[37] *See* Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1322, 1325 (S.D. Fla. 2001) (applying both California pre-discovery statute and Florida common law to require identification with reasonable particularity in a case where some discovery had already begun; not entirely clear whether court believed that district courts applying Florida trade secret law should apply a pre-discovery identification procedure in future cases).

[38] *See* Power Conversion, Inc. v. Saft Am., Inc., 1985 WL 1016, at *1-3 (S.D.N.Y. May 1, 1985) (where both parties accused one another of misappropriation, matter sent to independent expert to receive parties' submissions and designate areas for discovery). It should be noted that discovery masters are subject to confidentiality requirements – often as defined in the parties' protective order governing the case.

[39] CAL. CIV. PROC. CODE § 2019.210 (West 2006) ("In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under [the UTSA subsection relating to confidentiality orders].").

[40] Computer Econ., Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 n.6 (S.D. Cal. 1999) (quoting from statute's legislative history).

[41] Policies cited include (1) preventing overbroad trade secret accusations that improperly include information in the public domain; (2) giving the defendants fair notice of the exact charges against them before discovery begins; and (3) preventing plaintiffs from conducting "fishing expeditions" into the files

summaries incomplete. Federal courts in California have applied the statute in trade secret cases under the Erie Doctrine,[42] and courts elsewhere have also used it in cases under California law.[43]

¶52 Because so many trade secret cases have arisen in Silicon Valley, rulings on the degree of specificity required under California's pre-discovery statute have been common in the federal Northern District of California.[44] One such ruling is worth quoting, to illustrate how courts applying California law differ from courts in those jurisdictions which lack a pre-discovery identification requirement:

¶53 The Amended Identification of Trade Secrets shall be narrowed to include only items that Plaintiff considers are its actual trade secrets, and only those trade secrets that Plaintiff has reasonable grounds to allege were misappropriated. . . . If Plaintiff contends that a trade secret consists of a specific combination of items, it shall so state and concisely describe the combination. If Plaintiff contends that its specific use of an otherwise publicly known item constitutes its secret, it shall so state and concisely describe the use. All trade secrets shall be described in narrative form, rather than by cross-reference to other trade secrets or documents. If Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describe the trade secret(s).[45]

¶54 And in 2005, a California appellate court for the first time issued a ruling providing guidelines for what the statute requires. The court held that while absolute precision is not required at the pre-discovery stage, enough must be provided to separate alleged secrets from matters known to the trade:

> The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with "'sufficient particularity'" to limit the permissible scope of discovery by distinguishing the trade secrets "'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" . . . The degree of "particularity" that is "reasonable" will differ, depending on the alleged trade secret at issue in each case. Where, as here, the alleged trade secrets at issue consist of incremental variations on, or advances in the state of the art in a highly special-

---

of business rivals in order to concoct charges against them. *See id.* at 985; WEIL & BROWN, *supra* note 4, at § 8.60 (describing purposes of statute); MILGRIM, *supra* note 4, at § 16.01[5][b] (noting fair notice aspect of the statute).

[42] *See Computer Econ.*, 50 F. Supp. 2d at 985 (detailing purposes of statute and its legislative history). *See also* Neothermia Corp. v. Rubicor Med., Inc., 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004) (noting that using the statute in a manner inconsistent with the Federal Rules of Civil Procedure regarding amendments could create an *Erie* problem).

[43] *See, e.g.*, Convolve, Inc. v. Compaq Computer Corp., 2002 WL 14361, at *1 (S.D.N.Y. Jan. 4, 2002) (noting that special master had ruled on section 2019.210 issues such that discovery could commence).

[44] *See, e.g.*, Myrio Corp. v. Minerva Network Inc., 2001 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. April 4, 2001) (finding statement insufficient); Sys. Am., Inc. v. Softline, Inc., 1996 U.S. Dist. LEXIS 22415, at *1 (N.D. Cal. October 30, 1996) (finding statement "insufficient" and "extremely broad" where it outlined "a number of categories of documents"); Cal. Micro Devices Corp. v. Universal Semiconductor, Inc., 1995 WL 705144, at *1 (N.D. Cal. Nov. 21, 1995) (noting that because plaintiff had provided Cal. Civ. Proc. Code sec. 2019.210 statement, defendant had to respond to deposition questions by plaintiff).

[45] *See Myrio Corp.*, 2001 U.S. Dist. LEXIS 10461, at *1-3.

> ized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.[46]

¶55 It remains somewhat unclear what "reasonable particularity" means in any given case. Does it mean that a plaintiff must provide 51 percent of the details that would be necessary for a completely precise identification of each claim, 67 percent, 75 percent, or more? None of the jurisdictions that require a pre-discovery identification with "reasonable particularity" have yet defined exactly what minimum degree of precision a trade secret plaintiff must aim for.

### *D. The Discovery Stage*

¶56 The discovery stage is the heart of where identification disputes arise, because discovery is the means by which the defense can demand a complete, precise identification of each alleged secret. Again, however, the courts have been inconsistent in the amount of detail they have required – though the skill with which the defense demands identification no doubt plays a role in the varying holdings.

¶57 Some courts have readily granted defense motions to compel a detailed identification of the trade secret claims, usually in response to defense interrogatories.[47] In a 2006 Washington case, for example, the defendant served an identification interrogatory. In response, the plaintiff "referenced its complaint and then listed generic categories of trade secrets: 'installer list/network,' 'pricing strategy and policies,' and 'customer lists.'" It also included the evasive phrase "among other things." The court granted a motion to compel, noting that "[d]efendants are entitled to discovery related to all of the so-called 'other things' allegedly misappropriated."[48]

¶58 In turn, a 2005 Texas case describes how, on a motion to compel, a trial court addressed a plaintiff's recitation of generic concepts in its initial response by flipping

---

[46] *See* Advanced Modular Sputtering, Inc. v. Super. Ct., 132 Cal. App. 4th 826, 835-36 (2005).

[47] *See* Dapco Indus., Inc. v. Matec Corp., 1998 WL 563847, at *1 (Fed. Cir. 1998) (unpublished) (affirming dismissal of complaint because plaintiff did not respond to identification interrogatory or court order on motion to compel requiring the same); StonCor Group, Inc. v. Campton, 2006 WL 314336, at *1-2 (W.D. Wash. Feb. 7, 2006) (granting motion to compel); Excelligence Learning Corp v. Oriental Trading Co., 2004 WL 2452834, at *3-5 (N.D. Cal. Jun. 14, 2004) (granting motion to compel interrogatory requesting that plaintiff "identify in detail" alleged secrets where plaintiff had apparently listed only general categories); Compuware Corp. v. Health Care Serv. Corp., 2002 WL 485710, at *7 (N.D. Ill. Apr. 1, 2002) (issuing sanctions where defendant won motion to compel regarding interrogatory requesting identification of alleged secrets but plaintiff "dragged its feet" in responding, and merely listed functions of allegedly secret software); Multimedia Cablevision, Inc. v. Cal. Sec. Co-op, Inc., 1996 WL 447815, at *1-2 (D. Kan. Jul. 30, 1996) (defendant's interrogatory only asked plaintiff to identify the *documents* which comprised the basis for the trade secret claim; nonetheless, court granted motion to compel a better answer regarding the documents in question and issued sanctions against plaintiff); Uresil Corp. v. Cook Group, Inc., 135 F.R.D. 168, 174 (N.D. Ill. 1991) (granting motion to compel better interrogatory responses; "[I]t is clear that Uresil has not identified the components and/or concepts incorporated in the products Uresil claims Cook misappropriated. Nor does Uresil identify all information and documents alleged by Uresil to be confidential and to have been misappropriated by the defendant."); *See also* Microwave Research Corp. v. Sanders Assoc., Inc., 110 F.R.D. 669, 673-75 (D. Mass. 1986) (denying plaintiff's motion to compel defendant to produce documents where, after depositions, plaintiff identified only a general list of products in which it claimed trade secrets; discussion and holding are somewhat unclear).

[48] *See StonCor*, 2006 WL 314336, at *1-2.

those categories back at the plaintiff and requiring a precise identification regarding each of them:[49] There, the court ordered the plaintiff to

> "state specifically the identity of each 'functionality,' 'data field,' 'rule,' reflex,' 'structure,' 'design,' 'architecture,' 'integration of combination of various components,' 'negative knowledge,' 'method or process utilized for manipulation information,' 'trigger,' 'calculation code,' 'formula,' 'distribution,' and 'format, content, sequence, total structure and record selection of various reports,' or other feature, function or element of [plaintiff's] automobile dealership management system or related written materials that is the subject of this case that [plaintiff] contend[s] is a trade secret accessed or misappropriated by [appellees]. Each trade secret claimed by [plaintiff] shall be separately identified by [it] in such answers."[50]

¶59 In another case, a court rejected the plaintiff's initial interrogatory response, which listed a set of generic and conclusory phrases and made generalized references to a "ratio of ingredients." The court noted that the plaintiff "does not state how the ratio of ingredients relates to the manufacturing process, nor does it precisely describe how the manufacturing process varies according to the factors it has recited." In requiring a better response, the court held that the plaintiff's "answers concerning the nature of its alleged trade secrets are evasive, ambiguous, and incomplete."[51]

¶60 Similarly, a Pennsylvania court in an early case from 1972 found a trade secret plaintiff's responses to interrogatories seeking a specific identification of the alleged secrets "wholly evasive and nonresponsive," and reacted to the plaintiff's recitation of generic categories by rhetorically asking the plaintiff what within them was alleged to be secret:[52] "The answers to #20 can hardly be construed to enlighten Defendants as to the information allegedly misappropriated. What are the confidential materials? Who are the confidential suppliers of such materials? What are the confidential names and addresses of such customers, potential customers, dealers, distributors and health department officials?"[53]

¶61 Other courts have ruled against the plaintiff based on issues arising during a deposition,[54] or sent the matter to a special master to oversee the identification process.[55]

---

[49] *See* Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C., 183 S.W.3d 741, 745 (Tex. Ct. App. 2005) (dicta discussion of prior case proceedings; holding concerned arbitration issues).
[50] *Id.* at 745 n.1.
[51] *See* Unicure, Inc. v. Thurman, 97 F.R.D. 7, 13-14 (W.D.N.Y. 1982).
[52] *See* Cromaglass Corp. v. Ferm, 344 F. Supp. 924, 928 (M.D. Penn. 1972) (granting motion for imposition of sanctions for failure to answer interrogatories, including designation of facts alleged by defendants as being established for purposes of litigation).
[53] *Id.* at 927.
[54] *See* Diversified Tech., Inc. v. Dubin, 156 F.R.D. 132 (S.D. Miss. 1994) (depublished) (issue preclusion sanctions where plaintiff's refusal to identify alleged secrets included plaintiff's attorney giving instructions not to answer identification questions during Rule 30(b)(6) deposition).
[55] *See* Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1970) (in early case where special master ordered identification, plaintiff's submission of list of documents in which alleged secrets were claimed to reside was insufficient).

¶62 But at least two courts have allowed plaintiffs to respond to interrogatories with more generalized information such as categories in which the alleged secrets fall. These appear to be the minority position, and it is not clear from the rulings how the defense worded its discovery requests.[56] At least one court has not ordered more detail where the defendant's request was badly constructed.[57]

*E. The Summary Judgment Stage*

¶63 A plaintiff's failure to identify its alleged secrets during discovery can, and often does, lead to summary judgment. Courts have frequently granted summary judgment for the defense based on a failure to sufficiently identify the trade secret claims.[58]

¶64 In one of the most famous such cases,[59] the Ninth Circuit affirmed summary judgment on a trade secret claim where the plaintiff asserted secrets in a film projection

---

[56] *See* AlliantGroup, LP v. Axiom Custom Bus. Solutions, Inc., 2006 WL 568363, at *1 (S.D. Tex. 2006) (denying motion to compel regarding interrogatory requesting identification of specific alleged secrets because plaintiff "has sufficiently identified six categories of purported trade secret at issue"); C&F Packing Co. v. IBP, Inc., 1994 WL 36874, at *12 (N.D. Ill. 1994) (denying motion to compel where plaintiff attached further information identifying alleged secrets in its supplemental response though court did not clearly state whether any precision was supplied and held only that "IBP has been sufficiently *apprised of the basis* for C&F's trade secret claim.") (emphasis added).

[57] *See* Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co., 2003 WL 1956214, at *2-4 (N.D.N.Y. 2003) (court faulted defendant for the way it crafted its discovery requests in denying further identification).

[58] *See* VFD Consulting, Inc. v. 21st Serv., 425 F. Supp. 2d 1037, 1048-49 (N.D. Cal. 2006) (Minnesota law; plaintiff's "fatal" error of failing to identify "with any particularity" an alleged secret, referring to "the MedDiag system" and former employee's "experience and best judgment in the combination of the research data" for that system); Bradbury Co. v. Teissier-Ducros, 413 F. Supp. 2d 1209, 1222-24 (D. Kan. 2006) (granting summary judgment for defendant where plaintiff provided no detail at all on allegedly secret technology and explaining that "Plaintiff has the burden under the KUTSA to define its trade secrets with the precision and particularity necessary to separate it from the general skill and knowledge possessed by others"); Mextel, Inc. v. Air-Shields, Inc., 2005 WL 226112, at *42 (E.D. Pa. Jan. 31, 2005) (summary judgment for defendant on trade secret claim about a "sensor module" where plaintiff failed to identify what information in documents was allegedly secret); Callaway Golf Co. v. Dunlop Slazenger Group Am., Inc., 318 F. Supp. 2d 205, 215-16 (D. Del. 2004) (California law; one claim rejected where plaintiff made only "conclusory allegations" about golf ball technology, referring generally to information that former employee obtained); Glynn Interactive, Inc. v. Itelehealth, Inc., 2004 WL 439236, at *5 (D. Md. Mar. 9, 2004) (summary judgment for defendant where plaintiff made only exceedingly generic claim that secrets were in "expertise and information provided" and thus failed to identify alleged secrets); Nutrition Mgmt. v. Harborside Healthcare Corp., 2004 WL 764809, at *5 (E.D. Pa. Mar. 19, 2004) (summary judgment for defendant where fraud and other claims involved a trade secret accusation, but plaintiff did not identify secret); Storage Tech. Corp. v. Cisco Sys., Inc., 2003 WL 22231544, at *5-6 (D. Minn. Sep. 25, 2003) (summary judgment for defendant where, among other things, plaintiff failed to specifically identify alleged secrets in a network storage appliance); Canter v. West Pub. Co., 31 F. Supp. 2d 1193, 1203 (N.D. Cal. 1999) (depublished) (same where, among other things, plaintiff disobeyed court's order to identify alleged secrets pursuant to Cal. Civ. Code. sec. 2019.210 by pointing to 21 pages of documents); Utilase, Inc. v. Williamson, 1999 WL 717969, at *7 (6th Cir. Sep. 10, 1999) (unpublished) (summary judgment where plaintiff vaguely identified alleged secrets); Lynchval Sys., Inc. v. Chi. Consulting Actuaries, Inc., 1998 WL 151814, at *5-6 (N.D. Ill. Mar. 27, 1998) (summary judgment where plaintiff pointed only to defendant's technology instead of identifying alleged secrets in its own technology); Furniture Consultants, Inc. v. Acme Steel Door Corp., 658 N.Y.S.2d 284, 285 (N.Y. Ct. App. 1997) (total failure to identify alleged secrets); Julie Research Lab., Inc. v. Select Photographic Eng'g, 810 F. Supp. 513, 520 (S.D.N.Y. 1992) (same where plaintiff failed to identify an alleged secret separate from public domain information), *aff'd*, 998 F.2d 65 (2d Cir. 1993); Universal Analytics, Inc. v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177-78 (C.D. Cal. 1989) (same where plaintiff failed to identify any alleged secrets at all).

[59] *See* IMAX Corp v. Cinema Tech., Inc., 152 F.3d 1161, 1167-68 (9th Cir. 1998) (granting summary

system. The plaintiff failed to identify the precise dimensions and tolerances that constituted its alleged secrets in responding to discovery requests, and the court affirmed the district court and noted that the lack of identification in a "sophisticated and highly complex projector system" left the defendant unable to "prepare its rebuttal."[60]

¶65 In another case, the Seventh Circuit used harsh language against the plaintiff when affirming summary judgment on a software-based trade secret allegation.[61] The plaintiff argued that it had identified its trade secret claims in a 43-page document, but the court rejected that attempt:

> According to IDX, "a 43-page description of the methods and processes underlying and the interrelationships among various features making up IDX's software package" is enough. No, it isn't. These 43 pages describe the software; although the document was created for litigation, it does not separate the trade secrets from the other information that goes into any software package. Which aspects are known to the trade, and which are not? That's vital under the statutory definition. Likewise, IDX's tender of the complete documentation for the software leaves mysterious exactly which pieces of information are the trade secrets.[62]

¶66 In another detailed ruling on a software analysis, a Wisconsin court affirmed a grant of summary judgment on a software claim by noting the many components that make up a software system, and faulted the plaintiff for not identifying what about its own CAD software was distinct from "general knowledge in this niche" of the CAD software industry.[63]

¶67 But some courts, in our view, have gotten it wrong and allowed a plaintiff to survive summary judgment based on generic and non-specific sets of claims.[64] As an example, a federal court in Illinois denied a summary judgment motion where a plaintiff pointed to a long list of items which apparently included such high-level category descriptions as "[a] series resonant inverter driven by a half-bridge" and "[m]eans for reducing the cathode heating voltage after lamp ignition." The court found these non-specific categories to be "quite specific" in denying the motion.[65]

---

judgment to defendant where plaintiff claimed secrets in film projector but in response to defendant's interrogatory failed to specific exact trade secret claims "in the precise numerical dimensions and tolerances with sufficient particularity").

[60] *See id.* at 1167.

[61] *See* IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583-84 (7th Cir. 2002).

[62] *Id.* at 583-84.

[63] *See* ECT Int'l, Inc. v. Zwerlein, 597 N.W.2d 479, 483 (Wis. Ct. App. 1999) (affirming grant of summary judgment based on plaintiff's failure to identify alleged software secrets in "software file system" because it did not "describe which of the components" of the software were allegedly misappropriated).

[64] See Twin Vision Corp. v. Bellsouth Commc'n Sys., Inc., 1998 WL 385135, at *3 (9th Cir. Jun. 22, 1998) (unpublished) (though affirming grant of summary judgment on some claims, the court found plaintiff's generic identification of "factory access code" to be specific enough to identify one trade secret claim); *see also* McElmurry v. Fergusson, Inc., 2006 WL 572330, at *19 (M.D.N.C. Mar. 8, 2006) (denying motion for summary judgment where plaintiff pointed to "formulas"; unclear whether any further detail was given).

[65] *See* Nilssen v. Motorola, Inc., 963 F. Supp. 664, 673 (N.D. Ill. 1997). It is possible that the defense failed to explain to the court that the phrases quoted above are not unique in themselves, and that any trade secret would exist in the specific implementation details rather than the broader concepts. For example, the asserted but not identified "means" might be the place where the actual claimed trade secret would reside.

¶68 In another highly questionable ruling, a federal court in Connecticut denied a motion for summary judgment where the plaintiff apparently identified alleged secrets surrounding an executable software program in seven generic categories such as "'descriptions . . . with regard to the concept of how the program worked,'" (ellipsis in original) and "'the program itself.'" The court appears to have allowed the "combination trade secret" tactic described above, and held that because combination trade secrets can exist, the plaintiff's "metaphorical 'recipe'" was a good enough trade secret claim to survive the motion.[66]

¶69 And in some cases, of course, the plaintiff does provide detail sufficient to defeat the defendant's motion for summary judgment.[67]

*F. The Pre-Trial, Trial, and Post-Trial Stages*

¶70 In some cases, the plaintiff evades identification until the pre-trial stage, and courts sometimes react strongly against the plaintiff.[68] In other cases, some cases make it all the way into trial or post-trial proceedings before the identification dispute comes to a head. In many of these cases, it appears that the defense failed to raise the issue earlier, and sometimes the waiver is apparent.[69] Some courts have ruled against the plaintiff,[70]

---

A phrase that may appear complex to an outsider may be generic to one skilled in the art, but such distinctions must be drawn for a court reviewing an identification dispute.

[66] *See* Dreamcatcher Software Dev., L.L.C. v. Pop Warner Little Scholars, Inc., 298 F. Supp. 2d 276, 282-83 (D. Conn. 2004).

[67] *See* Charles Schwab & Co. v. Carter, 2005 WL 2369815, at *12 (N.D. Ill. 2005) (denying motion for summary judgment where plaintiff, in opposition papers, detailed its alleged software secrets by Bates number and file type. The court noted that plaintiff had previously been vague in interrogatory responses, but "perhaps in part due to the way in which Defendants framed the question."); Do it Best Corp. v. Passport Software, Inc., 2005 WL 743083, at *13 (N.D. Ill. Mar. 31, 2005) (plaintiff came "dangerously close" to losing on identification issue, but unlike other cases provided "specific lines of code and specific software features for which it claims protection."); Luigino's, Inc. v. Peterson, 2002 WL 122389, at *8-9 (D. Minn. Jan. 28, 2002) (granting and denying in part motion for summary judgment where plaintiff sufficiently identified some alleged secrets, though degree of precision was not described, but alleged only general categories and referred to documents for others); Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp., 940 F. Supp. 1300, 1304-05 (N.D. Ill. 1996) (denying motion for summary judgment on trade secret claim where, among other things, plaintiff attached an identification to complaint that "identifies each component" of alleged secrets and was thus sufficient; presumably the identification was filed under seal); Harbor Software, Inc. v. Applied Sys., Inc., 887 F. Supp. 86, 90 (S.D.N.Y. 1995) (denying summary judgment where plaintiff identified alleged secrets in appendix to complaint, but no details given about level of specificity); Savor, Inc. v. FMR Corp., 2004 WL 1965869, at *6-7 (Del. Super. Ct. Jul. 15, 2004) (noting that "[w]hen the plaintiff claims a 'compilation' trade secret, courts generally require that the trade secret be identified with even greater specificity"; plaintiff's identification, redacted from the published opinion, was sufficient to withstand motion for summary judgment on trade secret element).

[68] *See* Compuware Corp. v. Health Care Serv. Corp., 2002 WL 485710, at *8 (N.D. Ill. Apr. 1, 2002) (where plaintiff refused to provide exact identification of alleged secrets until "less than two weeks before the close of discovery, [it] severely prejudiced [defendant's] ability to chart a course for discovery and its defense in this case."); Package Mach. Co. v. Hayssen Mfg. Co., 164 F. Supp. 904, 910 (E.D. Wis. 1958) (dismissing case for plaintiff's failure to obey pre-trial order and identify its alleged secrets; "Nor should defendants have to wait until plaintiff puts in its case to see what it has to defend against.").

[69] *See* Cargill, Inc. v. Sears Petroleum & Transp. Corp., 388 F. Supp. 2d 37, 65 n.19 (N.D.N.Y. 2005) (on post-judgment motions, jury misappropriation verdict affirmed and by not previously objecting, defendant waived argument that verdict form did not specifically identify alleged secrets).

[70] *See* Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266-68 (7th Cir. 1992) (reversing judgment based on jury verdict where plaintiff failed to specifically identify alleged secrets; noting that specificity was especially important given that defendant held a patent in the technology at

but in many others, especially those after a final judgment, courts leave the ruling against the defendant in place.[71]

¶71 It is worth noting that the defendant's failure to raise the issue until the last minute leads to post-hoc justifications for a faulty judgment or jury verdict, when a timely argument might have changed the course of the case.[72] Because appellate courts tend to uphold jury verdicts, untimely argument can lead to questionable holdings. In one case, a plaintiff apparently failed to identify any specific alleged secrets within its software during a long jury trial, but the defendant does not appear to have raised the issue until post-trial motions. The district court affirmed the jury verdict by resorting to

---

issue); AMP Inc. v. Fleischhacker, 823 F.2d 1199, 1203 (7th Cir. 1987) (affirming judgment for defendant where, among other things, plaintiff "consistently failed throughout this litigation to identify any particularized trade secrets actually at risk. Prior to trial, AMP submitted six single-spaced, typewritten pages listing by general item and category hundreds of pieces of AMP internal information. Other courts have warned plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets."), *superceded by statute*, 765 Ill. Comp. Stat. 1065 (1988), *as recognized in* PepsiCo, Inc. v. Redmond, 54 F.2d 1262, 1268-69 (7th Cir. 1995); SL Montevideo Tech., Inc. v. Eaton Aerospace, L.L.C, No. 03-3302, 2006 WL 1472860, at *3 (D. Minn. May 26, 2006) (judgment as a matter of law where plaintiff claimed combination trade secret in motor design failed to specifically identify alleged secrets and instead gave only high-level descriptions; court noted that plaintiff "has not identified the 'guts' of the Montevideo motor or how the specific component parts of the Montevideo motor are combined in the 'guts' to constitute a trade secret when taken as a whole."); MBL (USA) Corp. v. Diekman, 445 N.E.2d 418, 426-27 (Ill. App. Ct. 1983) (early case affirming ruling on motion *in limine* that plaintiff must identify alleged secrets before questioning defendant's witnesses about defendant's technologies); Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897-98 (Minn. 1983) (in early case on appeal after trial, court affirmed misappropriation holding for one alleged secret, but reversed on claimed secrets in brushless motor where no dimensions or tolerances were identified; to the reader, however, neither alleged secrets appears to have been identified in detail).

[71] *See* Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1117 (Fed. Cir. 1996) (losing defendant argued on appeal that plaintiff failed to prove specific secrets; to the extent this was an identification argument (which is not entirely clear), court held that plaintiff had proved specific secrets, but no discussion of how much detail the plaintiff actually provided in the trial court); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 662 (4th Cir. 1993) (refusing to overturn jury verdict despite plaintiff's failure to identify precise secrets, and affirming on questionable ground that entire object code software was secret without questioning whether any particular secrets were identified in such code); Static Control Components, Inc. v. Darkprint Imaging, Inc., 240 F. Supp. 2d 465, 476-77 (M.D.N.C. 2002) (on post-trial motion for judgment as a matter of law, court held that plaintiff's corporate deposition witness failed to identify alleged secrets, and identification was still an open issue about "one week before trial," but refusing to grant new trial because of general misconduct by both sides); Smithkline Beecham Pharms. Co. v. Merck & Co., 766 A.2d 442, 447-48 (Del. 2000) (affirming trial judgment for plaintiff despite defendant's argument that plaintiff had, early on, given only a broad identification, because a more precise identification was given "following discovery").

[72] *See* 3M Co. v. Pribyl, 259 F.3d 587, 595-96 (7th Cir. 2001) (refusing to overturn jury verdict; allowing judgment against defendant based on vague claims that secrets existed somewhere in 500 pages of documents; it is unclear if defendant ever raised identification issue before appeal); Forro Precision, Inc. v. IBM Corp., 673 F.2d 1045, 1057 (9th Cir. 1982) (in early case still cited by trade secret plaintiffs seeking to avoid identification, appellate court rejected identification argument in cursory language following trial court judgment and jury verdict in favor of plaintiff; court's reasoning was apparently that because defendant obtained materials in which plaintiff claimed secrets, identification of precise secrets was unnecessary); Forscan Corp. v. Dresser Indus., Inc., 789 S.W.2d 389, 391-92 (Tex. App. 1990) (rejecting defendant's post-trial argument that plaintiff went beyond alleged secrets previously identified in interrogatory response; defendant waited too long to object);.

the all-too-familiar "combination trade secret" evasion, essentially validating the plaintiff's non-identification.[73]

## IV. PROPOSALS

¶72 Having reviewed the policy reasons why identification of alleged secrets is a crucial question, the mistakes courts all too often make when ruling on identification disputes, and the nationwide case law, we are in a position to offer guidelines and standards for ruling on identification disputes in trade secret litigation.

¶73 As a general proposition, we believe that courts should require trade secret plaintiffs to identify their alleged secrets in detail as early as possible in the litigation.[74] What follows are proposals tied to the stage of the litigation and the type of information claimed as secret, with general guidelines appropriate to all identification disputes. We also propose a model interrogatory requesting a precise identification of the plaintiff's trade secret claims.

### *A. General Guidelines*

¶74 Some general considerations are appropriate for all identification disputes.

- Separating Identification From the Secrecy Analysis: As described above, courts should always treat the identification requirement as a separate, threshold question before reaching the distinct issue of whether the claimed information actually amounts to a trade secret. Identification is not so much a fact issue as a drafting issue.

- Non-Confidential Identification: Courts should be wary of plaintiffs' purported identifications that list only general, high-level categories or technical terms. One general rule might be that if the list of alleged secrets is not marked as a confidential document or could have been listed verbatim in the complaint without actually disclosing the plaintiff's alleged trade secrets, the list is prima facie insufficient. No plaintiff making a good faith identification would disclose its alleged secrets in a non-confidential document.[75]

- Incomplete Identification: Another basic consideration is that if an identification list expressly includes phrases suggesting that it is incomplete – such as "including," and "among other things" – it should likewise be prima facie insufficient. Some courts have

---

[73] *See* Data Gen. Corp. v. Grumann Sys. Support Corp., 825 F. Supp. 340, 358-59 (D. Mass. 1993) (plaintiff gave testimony at trial about its alleged software secrets, but apparently did not actually define them with precision).

[74] To this end, courts should assist the parties by expediting review of protective orders that allow the plaintiff to identify the alleged secrets in a confidential manner, and by permitting identifications of trade secret claims to be filed under seal when it is necessary to refer to such information in a pleading before the court. These practices are routine in jurisdictions where trade secret litigation is common, but other courts are not as familiar with them.

[75] For a useful article providing advice for a plaintiff seeking to identify alleged secrets in good faith, see Victoria A. Cundiff, *How to Identify Your Trade Secrets in Litigation*, 574 PLI/Pat 557 (1999).

noted the problem of such "catch all" phrases when requiring more.[76]

- Avoid References to Voluminous Documents: Courts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a detailed identification. Documents such as design specifications may contain far more information that what is claimed as trade secrets, and reading a complex document may not inform the reader what precisely is being asserted as secret.[77] As an example, the Southern District of New York once recognized this problem by holding that a mere list of documents was an insufficient identification. The court required the plaintiff to identify all trade secrets claims, to list all documents referring to such claims, and "to key all documents or portions thereof to specific trade secrets and confidential information alleged to have been misappropriated" because "[a]t the very least, a defendant is entitled to know the bases for plaintiff's charges against it."[78]

- Requiring Identification of Combination Trade Secret Claims: We also believe that courts should require identification of alleged "combination trade secrets," and should not confuse the existence of such allegations with whether identification of particular combinations is necessary. We described above several rulings, mistaken in our view, where trade secret plaintiffs asserted "combination" secrets and avoided having to identify them. But many other courts have correctly held that trade secret plaintiffs must identify "combination trade secret" claims just as they must identify individual trade secret claims.[79] We believe that these decisions reflect

---

[76] *See* StonCor Group, Inc. v. Campton, No. C05-1225J1R, 2006 WL 314336, at *1-2 (W.D. Wash. Feb. 7, 2006) (granting motion to compel; plaintiff used phrase "among other things"); Systems Am., Inc. v. Softline, Inc., No. C96-20730 RMW PVT n1, 1996 U.S. Dist. LEXIS 22415, at *1 (N.D. Cal. Oct. 30, 1996) (finding plaintiff's Cal. Civ. Proc. § 2019.210 statement "insufficient" in part because it employed a "catch-all" phrase concerning "relevant business activities"); Struthers Scientific Int'l Corp. v. Gen. Foods Corp., 51 F.R.D. 149, 154 (D. Del. 1970) (where plaintiff's response to defendant's identification interrogatory included a "'catch-all' provision" claiming additional unspecified combination trade secrets, motion to compel more specific answer granted; "Struthers should be required to specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination. This matter cannot be left to pure speculation and conjecture.").

[77] We have seen a case, for example, where the trade secret plaintiff attempted to identify its alleged trade secrets by pointing to over one thousand documents and more than forty million lines of source code. The case settled before any ruling on that tactic, but we believe that the practice is not uncommon.

[78] *See* Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974).

[79] *See* Staffbridge, Inc. v. Gary D. Nelson Assoc., Inc., No. 024912BLS, 2004 WL 1429935, at *4 (Mass. June 11, 2004) (where plaintiff failed to identify alleged secrets in software product "literally on the eve of trial," and where plaintiff's expert report seeking to make such identification was too vague and conclusory, plaintiff ordered to serve a affidavit "that sets forth with rigorous and focused particularity what, and only what, the plaintiffs claim to constitute the trade secrets allegedly misappropriated by either of the defendants" or face summary judgment); Compuware Corp. v. IBM, No. 02-CV-70906, 2003 WL

the better reasoning, and should be followed by other courts. One such ruling, an early 1958 decision by a federal court in Wisconsin, is worth quoting for the court's indignation at the plaintiff's refusal to identify its combination claims of one hundred unspecified modifications:

Just specify the hundred different machines you claim, and diagram them. Let's find out what you claim was a trade secret that was improperly communicated to and used by the defendant. If there are a hundred, let's have a hundred, but let's have it specific so when this case comes on for trial, or if the defendant wants to take further discovery on those matters they will know what the issues are going to be and the court will know what the issues are going to be, and we won't come in here with a broad shotgun charge and be weeks putting in testimony on matters that could be handled in very short order. I think they are entitled to have that made very definite.[80]

- Keep the Identification Within the Scope of the Complaint: A final general consideration applicable at any stage of the case is that a plaintiff should not be permitted to allege trade secrets outside of the fact pattern pleaded in the complaint. While this may be rare, we have seen at least one case where a plaintiff alleged a customer list-type set of allegations in a complaint against its former salespeople, but then generally described hardware-based trade secrets in its California identification statement. In an unpublished ruling, the court granted the defendants' motion for an order limiting the scope of the trade secret claims after the defense raised the basic principle that the alleged secrets were beyond the claims and defenses at issue in the complaint.[81]

---

23212863, at *6-7 (E.D. Mich. Dec. 19, 2003) (rejecting motion for preliminary injunction where plaintiff claimed secrets in "unique combination of functions and capabilities" in certain software, "customer preferences," product documentation, and source code; court rejected claims, noting "As for its source code, Compuware has for whatever reason failed to identify any specific lines of source code that have been taken by IBM."); Jostens, Inc. v. Nat'l Computer Sys., Inc., 318 N.W.2d 691, 699-700 (Minn. 1982) (affirming summary judgment where court was "plagued with the elasticity of plaintiff's claim. Simply to assert a trade secret resides in some combination of other known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status."; rejecting plaintiff's various efforts at cobbling together an alleged combination trade secret); Struthers Scientific Int'l Corp. v. Gen. Foods Corp., 51 F.R.D. 149, 154 (D. Del. 1970) (where plaintiff's response to defendant's identification interrogatory included a "'catch-all' provision" claiming additional unspecified combination trade secrets, motion to compel more specific answer granted; "Struthers should be required to specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination. This matter cannot be left to pure speculation and conjecture."); Package Mach. Co. v. Hayssen Mfg. Co., 164 F. Supp. 904, 907, 910 (E.D. Wis. 1958) (rejecting plaintiff's effort to avoid identifying alleged secrets by asserting "a hundred different modifications" of technology at issue; dismissing case for failure to identify on motion to compel compliance with pre-trial order).

[80] *See Package Mach. Co.*, 164 F. Supp. at 910.

[81] *See* Mentor Graphics Corp. v. Verplex Sys., Inc., No. 5:00-CV-20562, (N.D. Cal. Mar. 15, 2001) (order

### *B. Type of Information*

¶75 Another important consideration is that the possibilities for identification differ according to the type of information being claimed as trade secrets. Some information can only be identified by naming it, such as customer contact information. With information in source code, however, there can be more than one plausible way to provide a precise identification.

- **Customer Lists and Business Information**: It should be clear that in cases involving simpler types of information such as customer lists, there are no choices other than defining exactly what the alleged secret is or merely listing generic categories. When a plaintiff claims trade secrets in customer list information, pricing or sales information, or business or marketing plans, it should be easy to tell the defendant exactly what the alleged secrets are – the plaintiff can simply name the supposedly secret customers, prices, ideas, and the like.[82]

- **Formulas, Measurements, and Mathematical Information**: As complex as chemical formulas, measurements, and math-based calculations can be, they too can be identified only by stating exactly what the item is: the numerical measurements or dimensions, the calculation expressed in mathematical terms, and so on. The same precise and detailed nature that can make this type of information secret also makes it easy to fully identify.

- **Software Code**: Identification of trade secret claims in software code can take many forms. For example, trade secrets could exist as (1) the functionality of compiled and executable object code; (2) source code implementing higher level algorithms that may or may not be secret; (3) information or formulas within source code; (4) algorithms or architecture; or (5) data structure items.[83] At the same time, software can contain non-secret information in those

---

granting defendants' motion for protective order).

[82] *See*, *e.g.*, Anderson, *supra* note 30, at § 11.23 (noting that with categories like customer lists, "there is no middle ground between identifying a customer and not making such an identification").

[83] One court has stated that "a computer program generally 'includes source code, which is the developer's tool in creating software, object code, and other technical information, including program architecture, design definitions or specifications, flow diagrams and flow charts, data structures, data compilations, formulae and algorithms embodied and used in the software.'" ECT Int'l, Inc. v. Zwerlein, 597 N.W.2d 479, 483 (Wis. Ct. App. 1999) (affirming summary judgment in part due to failure to identify trade secrets adequately) (quoting Robert C. Scheinfeld & Gary M. Butter, *Using Trade Secret Law to Protect Computer Software*, 17 RUTGERS COMPUTER & TECH. L.J. 381, 383 (1991) (footnotes omitted)). We find this characterization confusing. Source code is the human readable version of the instructions the computer will carry out. A computer program called a "compiler" transforms source code into executable object code that the computer may read directly. The "other technical information" referenced in the article could be characterized as either specific formulas embodied by and readable within a few lines of source code or overall high-level plans for what the program should accomplish and how it will accomplish it through certain algorithms and structure.

same categories, as well as auto-generated code, open source material, or basic code mandated by the programming language or type of program. Identification of each of these categories is thus worthy of independent consideration.

¶76 In the rare case where a trade secret plaintiff alleges that executable object code was misappropriated, the plaintiff should name the executable files, and identify what about their functionality is alleged to be secret.[84] Second, where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding.[85] Third, algorithms or formulas existing within code should be identified with exactitude just like mathematical information. Fourth, in the case of algorithms, the plaintiff should identify the precise combination of functions which comprise the algorithms at issue. Similarly, the higher-level architecture of the software should be identified by detailing the combination of the specific algorithms employed. Fifth, where secret data structures are alleged, the nature of those structures should be defined with particularity.[86]

---

[84] Trade secret cases about executable software are rare because the final, executable software product is often the version sold to the public, while the underlying source code remains secret. Such a case could arise if, for example, the plaintiff maintains executable object code as a tool used secretly for internal purposes rather than selling it and then accuses the defendant of taking it. Identifying the functionality provided by object code seems necessary to establish that the object code has economic value and differs from other, publicly-available executable files. After all, object code is not source code, and misappropriating an object code file would not be misappropriation of the source code used to make that file. A plaintiff could not accurately identify alleged secrets in object code by describing the source code used to create it. Indeed, in a different trade secret litigation context – that of reasonable measures used to protect the alleged secret, rather than identification of the alleged secret – courts have consistently held that there is a valid distinction between object code and source code, and that revealing object code does not disclose alleged secrets in source code. *See generally* Fabkom, Inc. v. R.W. Smith & Assoc., Inc., No. 95 Civ. 4552 (MBM), 1996 WL 531873, at *7 (S.D.N.Y. Sept. 19, 1996) (same; software "distributed to its customers only in its executable object code form. . . . This means that any person attempted to reveal the programming instructions would see an incomprehensible sequence of numbers . . . ."); ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F. Supp. 1310, 1323 (N.D. Ill. 1990) (plaintiff's "computer programs are only distributed in object code, which is not intelligible to human beings."); Q-Co Indus., Inc. v. Hoffman, 625 F. Supp. 608, 618 (S.D.N.Y. 1985) ("Only the object code is publicly available; this is the version of the program that is intended to be read by the computer and cannot be understood even by expert programmers.") (citing Glenn J. MacGrady, *Protection of Computer Software—an Update and Practical Synthesis*, 20 HOUS. L. REV. 1033, 1063 (1983) ("Secrecy will not be destroyed by the wide distribution of computer programs if they are distributed in object form only.")).Barr-Mullin, Inc. v. Browning, 424 S.E.2d 226, 229 (N.C. Ct. App. 1993) (plaintiff used reasonable measures to protect source code, and sold only object code software made from that source code to the public). Thus, identification of alleged secrets provided by object code differs from identifying trade secret claims in source code, and the two should not be confused.

[85] *See* Compuware Corp. v. IBM, No. 02-CV-70906, 2003 WL 23212863, at *6-7 (E.D. Mich. Dec. 19, 2003) (rejecting motion for preliminary injunction where plaintiff claimed secrets in "unique combination of functions and capabilities" in certain software, "customer preferences," product documentation, and source code; court denied preliminary injunction, noting: "As for its source code, Compuware has for whatever reason failed to identify any specific lines of source code that have been taken by IBM.").

[86] Databases can contain specific content and combinations of content in fields. A plaintiff may believe that such data constitutes trade secrets and, if so, that information should be identified.

- **Mechanical Devices**: Trade secrets might be embodied in mechanical devices that include secret parts unknown to the public or a secret combination of publicly known parts.[87] A plaintiff alleging trade secret claims about a secret part should identify that part in detail. If the plaintiff alleges that the trade secret is a combination of publicly known parts, the plaintiff should identify that combination, and the court should limit the plaintiff's ability to modify the alleged combination.[88]

- **Chemical Mixtures and Recipes**: Mixtures, whether for something as simple as some food product recipes or the combination of ingredients in a certain brand of gasoline, should be identified by the combination of publicly known elements – including the measurements or ratios for each ingredient.

- **Negative Information**: Negative information – sometimes called "what not to do" – can pose difficulties. One prominent commentator believes that because the total invention history of a combination-type trade secret can contain a body of negative knowledge in the sense of many steps not taken and choices not made, identifying that sum total should not be required.[89] We agree in part. It is unlikely that the defendant will be accused of actually taking and using that whole panoply of negative items, and thus there is no need to force the plaintiff to draft a complete invention history. However, where a plaintiff specifically accuses a defendant of taking and using one or more items of negative information, we see no policy reason not to require that those items also be defined in detail.

- **Destroyed Information**: Perhaps the hardest question involves an extreme scenario where a defendant physically destroys information that was valuable and secret, without leaving any copies behind. We know of no cases on this subject, and have never seen it in practice. A deserving plaintiff may have no ability to precisely identify what was destroyed, but a malicious plaintiff could claim purported value in information that never really existed, or that was of little actual value. This is an area where courts should have wide discretion to assess the facts of particular cases. For example, if it were impossible for plaintiff to identify the destroyed secret, a court could require identification of the circumstances of the

---

[87] In the case of computer hardware, "parts" could include source code – either firmware or software – integrated with physical hardware.

[88] *See infra* Section III(E).

[89] *See* POOLEY, *supra* note 4, at § 11.02 ("[T]he nature of a secret process, with its underlying platform of accumulated negative data, is such that it cannot practically be restated in exhaustive detail.").

alleged creation, destruction, and plaintiff's ownership in the information.

*C. Stage of the Case*

¶77 As discussed above, a court's handling of the identification dispute differs depending on the stage of the case. We believe that the pleading stage is not the time to consider identification questions, except in cases where the complaint fails the ordinary rules for indefinite statements.[90]

¶78 However, we believe that when a trade secret plaintiff requests preliminary injunctive relief that could seriously impact the defendant – by shutting its business, limiting a person's employment options, scaring away investors and customers, and the like – courts should require an identification of the alleged trade secrets at issue with a substantial degree of detail. There might be exceptions for highly unusual circumstances – where, hypothetically, there is concrete evidence that the defendant is planning an imminent foreign transfer of an immense amount of stolen software code, and there is no time to provide all the details. Courts are capable of separating such extreme facts from routine motions against departing employees who have just started a new company.

¶79 Most important, we believe that courts in jurisdictions that have not yet enacted a pre-discovery identification requirement for trade secret cases should do so, both as a valuable case management process and to encourage pre-lawsuit investigations. In addition to the trade secret pre-discovery cases described above, the approach several federal courts have taken in patent cases provides a useful analogy. Federal district courts in California, Georgia, Pennsylvania, and Texas have enacted special local rules for patent cases that require a more specific identification of the patent claims than already exist in the published patent. Specifically, these districts require patentees to explain with precision at a very early stage exactly what patent claims are being asserted and why the allegedly infringing product or process satisfies each element of the asserted patent claims.[91] As one court explained, the patent local rules were adopted to "place the parties on an orderly pretrial track," "require the plaintiff to carefully prepare for the filing of a patent suit," and "require parties to crystallize their theories of the case early in the litigation and to adhere to these theories once they have been disclosed."[92]

¶80 The benefit of identification in the trade secret context is even greater. In a patent case, the court and the defendant have notice of the patent's claims and have a description of the invention from the published patent itself. The local rules described above go a step further by removing any mystery about what particular claims the plaintiff will assert and how the plaintiff intends to argue that those claims cover an accused product or process. In a trade secret case, and absent an identification requirement, the court and the defendant cannot know how the plaintiff will allege that trade secrets were misappropriated, and, even worse, cannot know what the trade secret claims are. The need for identification in trade secret cases is thus more critical than in

---

[90] *See*, *e.g.*, CAL. CIV. PROC. CODE § 430.10(f) (permitting a demurrer to an "ambiguous and unintelligible" pleading); FED. R. CIV. P. 12(e) (permitting a motion for a more definite statement).

[91] *See* N.D. Cal. Patent. L.R. 3-1; N.D. Ga. Patent L.R. 4.1; W.D. Penn. LPR. 3.2; E.D. Tex. P.R. 3-1.

[92] *See* Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co., 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).

patent cases. Enacting local rules akin to these patent-based rules would be a worthy goal for trade secret law. In any event, courts can require pre-discovery identification by common law for case management purposes.

¶81 Finally, detailed identification should always be required by the summary judgment stage, assuming that discovery has taken place. But where a defendant fails to raise the identification issue until after trial, it is understandable why so many courts have refused to reverse on that basis.

*D. Defendant's Discovery Request*

¶82 As discussed above, the defense sometimes compounds the identification problem by serving badly-phrased discovery requests or, more importantly, failing to timely raise the issue. By failing to ask for a totally precise identification, a defendant can allow the plaintiff to get by with generic concepts and categories, and alter its claims without judicial review.

¶83 In one case, for example, the defendant's interrogatory apparently requested only that plaintiff *describe* the alleged secrets and documents in which they were contained. When the plaintiff responded with a generalized statement pointing to 17 pages and describing a "manufacturing process" "including" seven general concepts, the defendant moved to compel. But the court found the generalized identification sufficient.[93] Perhaps if the defendant had served a better-worded interrogatory demanding precision, the result would have been different.

¶84 Likewise, a defendant in a California case made a mistake when it tied its identification interrogatory to California's *pre-discovery* statute – which does not require absolute precision – instead of asking for complete precision.[94] Yet another defendant asked only for the identification of documents in which the plaintiff's alleged secrets were to be found, instead of asking for a precise identification of the claims themselves.[95] It therefore failed to seek the maximum degree of detail it could have requested. Similarly, a failure to press for complete identification in deposition questioning can allow the plaintiff latitude to alter its claims afterwards.[96]

¶85 We believe that a well-worded interrogatory or other discovery request should demand a totally precise, complete identification of each alleged trade secret. A model interrogatory with an accompanying definition is as follows:

[93] *See* Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co., No. 5:03CV165(HGH/GLS), 2003 WL 1956214, at *2-4 (N.D.N.Y. Apr. 24, 2003).

[94] *See* Synapsis, L.L.C v. Evergreen Data Sys., Inc., No. C 05-1524 JF, 2006 WL 2053512, at *2 (N.D. Cal. July 21, 2006) (granting motion to compel where plaintiff refused to respond).

[95] *See* Multimedia Cablevision, Inc. v. Cal. Sec. Co-op, Inc., No. 94-1130-MLB, 1996 WL 447815, at *1-2 (D. Kan. July 30, 1996) (Defendant's interrogatory which only asked plaintiff to identify the *documents* which comprised the basis for the trade secret claim; nonetheless, court granted motion to compel a better answer regarding the documents in question and issued sanctions against plaintiff.).

[96] *See* Cacique, Inc. v. V&V Supremo Foods, Inc., No. 03 C 4230, 2004 WL 2222270, at *5 (N.D. Ill. Sept. 30, 2004) (denying motion to strike portions of declaration submitted by plaintiff in opposition to motion for summary judgment; although defendant argued that declaration added additional trade secret claims not previously identified, court noted that defendant failed to "ask any follow-up questions" at deposition regarding area in which alleged secrets were claimed).

¶86 Identify with precision and specificity each and every alleged trade secret [Plaintiff] contends [Defendant] misappropriated. "Identify with precision and specificity each and every alleged trade secret" as used herein means to provide a specific description of each such alleged trade secret, on an individual basis for each such alleged trade secret, in such a manner that the exact identity, scope, boundaries, constitutive elements, and content of each such alleged trade secret are fully disclosed in writing, including any asserted combinations, [and with precision above that required by California Code of Civil Procedure section 2019.210]. Plaintiff should not rely on any vague or conclusory phrases that do not separately list and describe each such alleged trade secret.

¶87 This model request requires a totally precise identification of each alleged secret, without dissembling or deliberate obfuscation. It alerts the reader to typical evasion practices, and thus educates a court ruling on a motion to compel about what exactly is sought and what is insufficient. The request also makes clear that more is sought than what some jurisdictions require at the pre-discovery stage – California law in this model – though of course the request can be adapted to different jurisdictions.

### *E. Amendment*

¶88 The question sometimes arises whether a trade secret plaintiff can unilaterally amend its identification of trade secret claims as the case proceeds. One can envision circumstances where amendment would be proper, such as where a plaintiff learns that a defendant has misappropriated trade secrets beyond those first believed to be at issue. But one can also envision circumstances where the plaintiff drops one set of meritless claims in order to pursue another, alters claims to avoid summary judgment or to add in new claims just before trial, or changes definitions of existing claims to confound the defendant's ability to research the public domain.

¶89 A 2004 federal court case applying California law created a rule that we believe makes sense and should be widely adopted. The court held that because a statement identifying the plaintiff's alleged trade secrets is akin to a pleading, the plaintiff would have to show good cause to amend the statement, just as it would have to do in order to amend its complaint.[97] Subjecting amendments and alterations to judicial review would help prevent the problems we have experienced in many cases where the alleged secrets change repeatedly as the case proceeds, often as the close of discovery nears.

¶90 Another good practice is to prevent the plaintiff from amending its identification of alleged secrets in order to avoid a defendant's pending summary judgment motion.[98] The same practice should apply if the plaintiff claims a "combination

[97] *See* Neothermia Corp. v. Rubicor Med., Inc., 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004). This rule is intended to prevent the "shifting sands" problem in intellectual property cases where a plaintiff changes its claims around as the case proceeds. *See id*. (noting the problem to be "a concern which applies with equal force to trade secret allegations."). *See also* Vacco Indus., Inc. v. Van Den Berg, 5 Cal. App. 4th 34, 51 n.16 (Cal. Ct. App. 1992) (prior case under California law finding "no error" in fact that plaintiff amended statement identification statement "several times," but providing no information as to whether trial court oversaw such amendments).

[98] *See* Pixion, Inc. v. Placeware, Inc., 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005) (although court's incorrect view of what level of specificity is required under Cal. Civ. Proc. § 2019.210 is clear under the subsequent California state court ruling in *Advanced Modular Sputtering*, *supra* note 40, court refused to allow plaintiff to avoid summary judgment motion by going beyond identification previously stated to be

trade secret" and tries to alter its sub-elements in the face of a summary judgment motion.[99] While this might be inappropriate where discovery has only just begun and the motion is filed too early, we believe that courts would promote and invite litigation abuses if they allowed trade secret plaintiffs to alter the claims and escape a motion for summary judgment filed after significant discovery has taken place.

¶91 In turn, some courts have refused to allow amendment and addition of new trade secret claims after discovery closes, and that too should be a universal rule.[100]

### *F. Sanctions*

¶92 Courts have issued sanctions in several trade secret cases where plaintiffs failed to identify their alleged secrets despite defense efforts to obtain more information.[101] Others have declined to award sanctions even where the failure to identify (among other problems) was manifest.[102] Rule 11 and similar state rules already

---

complete by claiming new details of functionality as trade secrets; court instead ruled on claims as previously asserted in identification statement).

[99] *See* Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108 (8th Cir. 1997). In *American Airlines*, the Eighth Circuit affirmed the district court's summary judgment ruling against the trade secret plaintiff, American Airlines. The plaintiff's expert testified that its combination trade secret consisted of five elements and implementation algorithms. *Id.* at 110. After discovering that the defendant had not acquired all five elements, the plaintiff attempted, through expert testimony, to claim that the other four elements constituted a valid combination trade secret. *Id*. The court, rejected this "sham" definition of the combination trade secret and upheld the district court's summary judgment based on the original definition of the combination trade secret that included all five elements of the plaintiff's system. *Id.* at 111-12. The court concluded "After careful examination of American's expert's testimony we agree with the district court's conclusion that American attempted to manufacture a material issue of fact just to evade the impact of summary judgment by inexplicably changing its testimony. Thus, the district court correctly disregarded the subsequent manufactured contradictory testimony of American and concluded that no factual issue for trial existed for the reason that KLM never received any trade secret of American's.").

[100] *See* Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc., 12 F. Supp. 2d 760, 770 (M.D. Tenn. 1998) (prohibiting plaintiff from submitting 36 new trade secret claims after discovery closed; prior interrogatory response had identified 31 *other* alleged secrets); Rockwell Graphic Sys., Inc. v. Dev Indus., Inc., No. 84 C 6740, 1992 WL 162241, at *3-5 (N.D. Ill. July 12, 1992) (excluding allegedly secret drawings raised after discovery closed).

[101] *See* Compuware Corp. v. Health Care Serv. Corp., No. 01 C 0873, 2002 WL 485710, at *7 (N.D. Ill. Apr. 1, 2002) (the court issued sanctions where defendant won motion to compel regarding interrogatory requesting identification of alleged secrets but plaintiff "dragged its feet" in responding and merely listed functions of allegedly secret software); Computer Econ., Inc. v. Gartner Group, Inc., No. 98-CV-0312 TW (CGA), 1999 WL 33178020, at *6 (S.D. Cal. Dec. 14, 1999) (awarding defendant attorneys' fees for many reasons, including plaintiff's claims of "trade secret protection over several vague classes of unprotectable information"); Multimedia Cablevision, Inc. v. Cal. Sec. Co-op, Inc., No. 94-1130-MLB, 1996 WL 447815, at *1-2 (D. Kan. July 30, 1996) (sanctions issued against plaintiff where defendant's motion to compel better interrogatory answer on documents containing alleged secrets granted); Diversified Tech., Inc. v. Dubin, 156 F.R.D. 132 (S.D. Miss. 1994) (depublished) (issue preclusion sanctions for plaintiff's repeated refusal to identify alleged secrets; "With trial of this matter set for less than a week from today, the prejudice to defendants is immeasurable."); Automated Packaging Sys., Inc. v. Sharp Packaging, Inc., No. 88-C-0656, 1989 WL 223755, at *3 (E.D. Wis. Mar. 17, 1989) (fees awarded for meritless request for preliminary injunction where "[t]he plaintiff's case fails because of its inability to establish any sort of identifiable trade secret which could lend itself to an injunctive proceeding."); Cromaglass Corp. v. Ferm, 344 F. Supp. 924, 927 (M.D. Penn. 1972) (awarding discovery sanctions where defendant moved to compel over inadequate interrogatory responses on identification of alleged secrets).

[102] *See* Clearwater Sys. Corp. v. Evapco, Inc., No. Civ.A 305CV507SRU, 2006 WL 726684, at *2 (D. Conn. Mar. 20, 2006) (refusing to award UTSA attorneys' fees despite baseless lawsuit; "Clearwater's ineffective identification of the trade secrets pursued in this case left much to be desired and doubtless

require that a plaintiff understand precisely the alleged secrets that it accuses the defendant of misappropriating, and there is no reason the plaintiff should be unable to share this understanding – essential to the plaintiff's core case—with the defendant. Because non-identification is a lawyers' tactic used to gain an unfair litigation advantage, we believe that sanctions should be readily awarded where a trade secret plaintiff tries to supply as little information as possible and hopes that the court will not require more.

## V. Conclusion

¶93 Disputes regarding identification of alleged trade secrets are common in trade secret litigation around the country. Courts thus far have not articulated a uniform set of standards and guidelines to address the problem. But such rules are needed, because trade secret plaintiffs generally refuse to precisely identify their trade secret claims unless the court forces them to do so. Our proposals would ensure that the many policy grounds supporting a precise identification of alleged secrets would be satisfied in any given case.

---

increased EVAPCO's costs in defending the litigation. Still, I am not convinced that Clearwater's problems with trade secret identification reflect a calculated strategy to gain an advantage in the litigation or to unfairly compete with EVAPCO.").