IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CFGENOME, LLC, a Delaware limited liability company; and DR. M. ROHAN FERNANDO, an individual;<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>STRECK, INC.,<br><br>　　　　　　Defendant. | 4:16CV3130<br><br>**MEMORANDUM AND ORDER** |

　　　　Plaintiff CFGenome, LLC and Defendant Streck are direct competitors. Plaintiff Fernando previously worked for Streck, and he now works for CFGenome, LLC.[1] The parties' lawsuit centers on whether Plaintiffs misappropriated Streck's trade secrets regarding the development and marketing of blood collection tubes ("BCT"); specifically, Streck's Cell-Free DNA BCT® ("Cell-Free BCT") (a project Fernando worked on while at Streck). CFGenome marketed a competing product, the Exo DNA ProTeck BCT ("Pro-teck BCT"), after Fernando started working at CFGenome. CFGenome seeks a declaration that its ProTeck BCT was not invented through misappropriation of Streck's trade secrets: Streck counterclaims for misappropriation of trade secrets and breach of contract.

　　　　The parties agree that to effectively pursue discovery and prepare for trial, they need a protective order. They do not agree on whether that protective order should include a patent prosecution bar, an attorneys' eyes only provision

---

[1] Plaintiffs will collectively be referred to as "CFGenome."

("AEO"), or both. Plaintiffs argue that the protective order in this case should include a patent prosecution bar to protect against the risk of inadvertent disclosure of confidential information. Defendant does not agree that a patent prosecution provision is necessary in this case, arguing an AEO provision is sufficient.[2] The court required briefing on the issue. (Filing No. 77).

ANALYSIS

Parties participating in patent litigation in the federal courts may be required to disclose confidential technical and proprietary information as part of the discovery process. Disclosure of such information to a direct competitor raises significant concern that the information will be misused, particularly when the competitor's counsel serves as both its counsel in civil litigation before the court and as its patent prosecutor before the Patent and Trademark Office ("PTO").

To remedy this perceived threat of misuse, the disclosing party may propose a protective order which includes a "patent prosecution bar;" an order prohibiting persons who had access to the opponent's confidential information produced for litigation from patent prosecution before the PTO regarding the litigation subject matter. Edwards Lifesciences AG v. CoreValve, Inc., 699 F.3d 1305, 1316 (Fed. Cir. 2012) (citing In re Deutsche Bank Trust Co. Americas, 605

---

[2] Although Defendant Streck does not believe a patent prosecution provision is necessary in this case and opposes its entrance, Streck previously agreed such a provision could be entered as long as it was narrowly tailored. (See Filing No. 84 at CM/ECF p. 2). But the parties failed to agree on the scope of any patent prosecution provision. Accordingly, the court will construe Streck as being opposed to the patent prosecution bar and will examine the potential terms only if the Court first determines such a provision should be entered.

2

F.3d 1373 (Fed. Cir. 2010)). A patent prosecution bar is entered to limit the risk that counsel will inadvertently disclose or improperly use confidential information received and reviewed during litigation when later performing patent prosecution work. Id. Courts recognize that despite good faith and rigorous efforts to maintain confidentiality, a recipient of confidential information during litigation may unintentionally disclose or use that information; that once learned, the confidential information cannot be unlearned, and it may infiltrate that attorney's future patent prosecution work on the same subject matter. Id.

Determining whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the PTO, is an issue unique to patent law. Deutsche Bank, 605 F.3d at 1377. To promote nationwide uniformity, "Federal Circuit law applies to discovery matters if the determination implicates an issue of substantive patent law." Id. As such, the question of whether a protective order in patent litigation should include a patent prosecution bar is governed by Federal Circuit law. Id. at 1378; Clayton Corp. v. Momentive Performance, Materials, Inc., No. 4:12CV1349 AGF, 2013 WL 2099437, at *1 (E.D. Mo. May 14, 2013) (Fleissig, J.). Specifically, Deutsche Bank provides the law applicable to the issue of whether, under the facts presented, a patent prosecution bar is warranted.

Unfortunately, courts have adopted and applied two different interpretations of the Deutsche Bank standard. As thoroughly explained in EON Corp. IP Holdings, LLC v. AT&T Mobility, 881 F. Supp. 2d 254 (D. PR 2012),

> Most of the courts interpreting Deutsche Bank have read it to require a particular two-step inquiry, step one of which requires the moving party [to] show, on a counsel-by-counsel basis, that there is an

3

unacceptable risk of inadvertent disclosure of confidential information; at the second step, they balance that risk against the potential harm to the non-movant.

EON Corp., 881 F. Supp. 2d at 255–56 (citing NexEdge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d 1040, 1043 (D. Ariz. 2010); Iconfind, Inc. v. Google, Inc., No. 110319(GEB/JFM), 2011 WL 3501348, *5 (E.D. Cal. Aug. 9, 2011); Kraft Foods Global, Inc. v. Dairilean, Inc., No. 10-8006, 2011 WL 1557881 (N.D. Ill. Apr. 25, 2011)). Under this interpretation, after step one is complete and the court has determined a risk exists based on the competitive decisionmaking role of counsel, the court must then determine whether the information involved in the case is the type that would trigger a patent prosecution bar and then must balance the risk of potential harm against the party's right to its chosen counsel. Deutsche Bank, 605 F.3d at 1380–81.

In contrast, some courts first decide whether, "as a threshold matter[,] the proposed prosecution bar 'reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information.'" [Applied Signal Technologies, Inc. v. Emerging Mkts. Commc'ns, No. 09-2180(SBA/DMR), 2011 WL 197811 at *2 (N.D. Cal. Jan. 20, 2011)] (quoting In re Deutsche Bank, 605 F.3d at 1381). This threshold inquiry "essentially measures whether a prosecution bar is reasonable" given the information at issue, the scope of activities that would be prohibited and their subject matter, and the duration of the bar. Id. If the court decides the threshold is met, it then "measure[s] this risk—rather than a risk determined by a counsel-specific competitive decisionmaking inquiry—'against the potential injury to the party deprived of its counsel of choice.'" Id. EON Corp., 881 F. Supp. 2d at 256.

4

The distinction between these two interpretations significantly impacts the burden carried by the party seeking a patent prosecution provision: The first requires the movant to make a threshold showing that a risk of inadvertent disclosure exists based on opposing counsel's role in competitive decisionmaking; the second requires that the movant only show a patent prosecution bar would be reasonable in a particular case, and after the entrance of the bar, requires the parties to show a particular attorney should either be exempt from or subject to the bar.

While this issue is a matter of first impression in this district,[3] our sister courts within the Eighth Circuit have followed the first interpretation—requiring the party seeking a patent prosecution provision to make a threshold showing that the specific counsel is involved in competitive decisionmaking. See Regal Beloit Am., Inc. v. Broad Ocean Motor LLC, No. 4:16cv00111JCH, 2017 WL 35702 (E.D. Mo. Jan. 4, 2017); Clayton Corp. v. Momentive Performance Materials, Inc., No. 4:12CV1349, 2013 WL 2099437 (E.D. Mo. May 14, 2013); Sanders v. Mosaic Co., 09-00016-CV-W-JTM, 2012 WL 640159 (W.D. Mo. Feb. 27, 2012). The undersigned magistrate judge agrees.

Patent prosecution bars are imposed on a counsel-by-counsel basis and the court must first determine "[w]hether an unacceptable opportunity for inadvertent disclosure exists" based upon the role of the party's counsel. Deutsche Bank, 605 F.3d at 1378. This question specifically turns on the extent to which counsel is involved in "competitive decisionmaking" for his client.

---

[3] Although this district has previously determined whether patent prosecution bars should be entered in other cases, see, e.g., Vishay Dale Elecs., Inc. v. Cyntec Co., No. 8:07cv191, 2008 WL 4372765 (D. Neb. Sept. 22, 2008), this is the first time the issue was analyzed under the standard set forth in Deutsche Bank.

'Competitive decisionmaking' refers to counsel's relationship with his client and his role in advising and participating in the client's decisions concerning pricing, product design, and other matters which may be "made in light of similar or corresponding information about a competitor." Deutsche Bank, 605 F.3d at 1378 (quoting U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984)).

The court in Deutsche Bank expressly refused to adopt a per se rule that every attorney who takes part in patent prosecution is a competitive decisionmaker. Deutsche Bank, 605 F.3d at 1379-80. The court found that where an attorney's patent prosecution duties consist largely of status reporting or "high-altitude oversight" of patent prosecution, "[t]here is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation." Id. The court reasoned that attorneys who are "more substantially engaged with prosecution," such as those

> obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution

are more likely to engage in competitive decisionmaking and present a higher "risk of inadvertent disclosure of competitive information learned during litigation." Deutsche Bank, 605 F.3d at 1380. It is "specific evidence—not an inflexible rule—that supports a finding of competitive decision making [sic]." Pfizer Inc. v. Apotex Inc., 744 F. Supp. 2d 758, 765 (N.D. Ill. 2010) (citing Deutsche Bank, 605 F.3d at 1380).

CFGenome seeks a patent prosecution bar provision as to Streck counsel Eric Dobrusin. Because the party seeking the inclusion of a patent prosecution bar within a protective order must show good cause exists for its issuance, Deutsche Bank, 605 F.3d at 1378 (citing Fed. R. Civ. P. 26(c)), CFGenome carries the burden of showing that Dobrusin's "representation of the client in matters before the PTO is likely to implicate 'competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation.'" Clayton Corp., 2013 WL 2099437 at * 1 (quoting Deutsche Bank, 605 F.3d at 1381).

The only evidence before the court concerning Dobrusin's competitive decisionmaking role is a declaration submitted by Streck. According to this declaration, Dobrusin is the founder of The Dobrusin Law Firm, PC located in Pontiac, Michigan. (Filing No. 85-1). He has been outside counsel for Streck in various capacities on a near continuous basis since approximately 1995. (Id.) According to the declaration, he does not regularly participate in Streck business activities that are typically regarded as competitive decisionmaking. (Id.) His role in product design, product formulation, or in process design, if any, has been limited to evaluating the scope of Streck patent applications to assure Streck is not infringing on the existing patents of others. (Id.) That is, by the time Dobrusin is involved in the patent process, Streck has already started designing a product, formula or process. (Id.) Dobrusin's involvement with Streck inventors typically begins after an idea is internally generated. (Id.)

Dobrusin does not know the organizational structure at Streck and he is not familiar with the heads of Streck's sales, marketing, purchasing, or

advertising departments. (Id.) When Dr. Fernando was in charge of Research and Development at Streck, Dobrusin interviewed him regarding some of the intellectual property implicated in Streck's patent applications, but Dobrusin is not actively involved in the ongoing activities of the Research and Development department. (Id.) (Filing No. 90).

Dobrusin does not provide work on all of Streck's patented product lines. The focus of his patent work for Streck has been on product lines for clinical laboratory quality control products (e.g., "controls") for hematology instruments (e.g., blood cell count, blood cell dimension analyzers), sample preservative reagents, unique tubes for collecting and/or handling biological samples, chemical reagents for use in certain instruments, PCR Amplification instruments, Real Time PCR instruments, and erythrocyte sedimentation rate instruments. (Filing No. 85-1 ¶¶ 18 & 19).

Dobrusin's declaration affirmatively states that he does not regularly participate in competitive decisionmaking. (Filing No. 85-1). His only input on the content of patent applications is evaluating the applications and providing legal advice <u>after</u> the technology, scope, and general content of the applications have already been determined and an application has been drafted. CFGenome submits no evidence that Dobrusin has a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios," or that he is otherwise "substantially engaged" in patent prosecution. See Deutsche Bank, 605 F.3d at 1380. And CFGenome does not present evidence regarding any other attorney for whom a bar is appropriate.[4] Accordingly, based

---

[4] CFGenome argues that the patent prosecution bar is still necessary even if it is determined that Dobrusin does not act in a competitive decisionmaking capacity

on the evidence of record, the Court finds that Dobrusin is not engaged in competitive decisionmaking for Streck so as to pose a risk of inadvertent use of confidential information learned in litigation. See ActiveVideo Networks, Inc. v. Verizon Communs., Inc., 274 F.R.D. 576 (E.D. Va. 2010).

Plaintiffs argue this case is analogous to Vishay Dale Elecs., Inc. v. Cyntec Co., where this court found that outside patent counsel were competitive decisionmakers and entered a patent prosecution bar. See Vishay, 2008 WL 4372765. Outside counsel in Vishay had "overall responsibility for advising the [Vishay] on patent prosecution matters and patent litigation, including [the Vishay] case" and "handl[ed] many pending patent applications and previously issued patents for [Vishay]." Vishay, 2008 WL 4372765 at *17. Accordingly, the court in Vishay found that outside counsel played a "key advisory role" and had a "high level of influence on patents" because Vishay's outside patent counsel had been "highly trained with regard to the plaintiff's products, specifically the product at issue. . . " Vishay, 2008 WL 4372765 at *18. The court does not find that Dobrusin's involvement rises to the same level as counsel in Vishay. Dobrusin does not have overall responsibility on patent prosecution matters but instead only deals with Streck's patents once they have been internally generated.

CFGenome has not met the threshold requirement of showing that absent a patent prosecution bar, Dobrusin's involvement in the subject matter of this litigation presents an unacceptable risk of inadvertent disclosure of confidential

---

because Streck has to employ "some people who are competitive decisionmakers[.]" (Filing No. 83 at CM/ECF p. 8). While it is undoubtedly true that some Streck employees engage in competitive decisionmaking, this fact alone does not necessitate the entrance of a patent prosecution bar, especially when the parties agree the protective order should contain an AEO designation which will prevent anyone except counsel to this matter to review highly-confidential information. (See Filing Nos. 83-1 & 85-3).

information. Since CFGenome has failed to satisfy the first step in the Deutsche Bank standard, the undersigned need not and will not address the parties' disagreements regarding the scope of information covered nor the arguments concerning the levels of designation to be used. (See Filing No. 83 at CM/ECF p. 14).

Although the court does not find that a patent prosecution bar is warranted in this case, the court agrees with the parties that an AEO designation is appropriate to protect the technical and proprietary information of the parties. (See Filing No. 89 at CM/ECF p. 2 n.1).

IT IS ORDERED:

1) The parties' request for a protective order, (Filing No. 92), is granted as outlined in this order.

2) The parties' stipulated protective order shall be filed by June 8, 2018.

Dated this 1st day of June, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge