IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CFGENOME, LLC, a Delaware limited liability company; and DR. M. ROHAN FERNANDO, an individual;<br><br>       Plaintiffs/Counter Defendants,<br><br>   vs.<br><br>STRECK, INC.,<br><br>       Defendant/Counter Plaintiff<br><br>   vs.<br><br>GARY KRZYZANOWSKI,<br><br>       Third-Party Defendant. | **4:16CV3130**<br><br><br>**MEMORANDUM AND ORDER** |

Pending before me is the motion to quash filed by Plaintiffs/Counter-Defendants CFGenome, LLC, Dr. M. Rohan Fernando, and Third-Party Defendant, Gary Krzyzanowski. (Filing No. 178).   For the reasons explained below, the court will grant the motion for protective order/to quash subparagraphs (d), (e), (f), and (i) of topics 17 through 24 of the proposed subpoena to be served on Patricia Alvarado, (Filing No. 180-4), and the court will grant the motion for protective order/to quash paragraphs 4 through 9, 14, 15, 17, and 20; subparagraph (f) of topics 10, 11, 12, and 13; and  subparagraphs (d), (e), and (h) of topics 24 through 29 of the proposed subpoena to be served on UNMC. (Filing No. 180-3). The court will not quash paragraph 22 of the proposed subpoena to be served on UNMC.

## STANDARD OF REVIEW

A party may move for an order protecting it from disclosure of discovery. See Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 926 (8th Cir. 1999). Upon a showing of good cause, the court may forbid the discovery or modify the disclosure by specifying the terms or method of discovery. See Fed. R. Civ. P. 26(c)(1)(A).

Where the discovery is requested in a third-party subpoena, the federal and local rules limit a party's capacity to object. See Fed. R. Civ. P. 45; NECivR 45.1. "[An] adverse party has standing to object to a third-party subpoena on grounds of relevance or to protect a personal right or privilege in the information requested." Jenkins v. Pech, No. 8:14CV41, 2015 WL 728305, at *3 (D. Neb. Feb. 19, 2015) (citing Streck, Inc. v. Research & Diagnostic Sys., Inc., No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009).

The scope of permissible discovery is broad. The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy for the purposes of discovery, includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad

disclosure." Streck, Inc. v. Research & Diagnostic Sys., Inc, 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (quoting Moses v. Halstead, 236 F.R.D. at 671.) However, when the relevancy of the discovery request is not readily apparent, the court need not consider proportionality unless the moving party first shows how the requested information is relevant. Id.

Although the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 and is subject to the rules that apply to other methods of discovery, (McGehee v. Nebraska Dept. of Corr. Servs. No. 4:18-cv-3092, 2019 WL 266423 (D. Neb., Jan. 17, 2019), the standard for nonparty discovery may require a stronger showing of relevance than for party discovery. Cor Clearing, LLC v. Calissio Res. Grp. Inc., 8:15-cv-317 (D. Neb. 2016).

STATEMENT OF FACTS

A.    The Claims and Defenses Raised

The court's relevance determination rests on the claims and defenses raised in the operative pleadings: The Amended Complaint filed by CFGenome and Fernando, (Filing No. 58), as narrowed by the parties' joint stipulation for dismissal, (Filing No. 154); Defendant Streck Inc.'s Answer and Affirmative Defenses to Plaintiffs' Amended Complaint, (Filing No. 69); Defendant Streck's Amended Counterclaim and Third Party Complaint, (Filing No. 59);[1] the Answer to First Amended Counterclaims filed by CFGenome and Fernando, (Filing No.

---

[1] The portion of Filing 59 which provides Streck's Answer to Plaintiffs' Complaint was superseded by Streck's Answer to Plaintiffs' Amended Complaint, (Filing No. 69).

70); and Third-Party Defendant Krzyzanowski's Amended Answer and Affirmative Defenses to the Third-Party Complaint, (Filing No. 144).

1.    The Amended Complaint filed by CFGenome and Fernando.

Plaintiffs' Amended Complaint alleges as follows:

Fernando worked for Streck from 2007 until September of 2014. In late 2013, Fernando signed an Employee Confidential Information, Inventions, and Non-Solicitation Agreement regarding his work at Streck (the "Agreement"). Fernando left his employment at Streck when Dr. Wayne Ryan ("Dr. Ryan"), the founder and former CEO of Streck, was pushed out of the company by Streck's new CEO, Connie Ryan (Dr. Ryan's daughter). After leaving Streck, Fernando began various research projects and worked as a consultant for CFGenome. Fernando's work was funded by CFGenome, and in a written agreement, Fernando agreed to assign any new inventions to CFGenome. (Filing No. 58, at CM/ECF p. 5, ¶ 24).

Fernando began working on an idea for a chemical composition to be used in a blood collection tube that would stabilize extracellular vesicles in a blood sample. This research began more than a year after he left his Streck employment, ultimately resulting in the invention of a new type of blood collection tube, the Exo DNA ProTeck Blood Collection Tube®, ("ProTeck BCT"). The ProTeck BCT directly competes with a Streck product, the Cell-Free DNA BCT® ("Cell-Free BCT").

In July of 2016, Streck accused Plaintiffs of misappropriating Streck's trade secrets and confidential information, and it accused Fernando of violating the

Agreement by disclosing Streck's confidential and trade secret information, (Agreement, ¶ 2, the "confidentiality" provision); using information from his Streck employment to invent new products within one year of his Streck employment, and not assigning the rights to those products/advancements to Streck, (Agreement, ¶ 4, the "holdover" provision); and soliciting business away from Streck in favor of CFGenome, (Agreement, ¶ 5, the "non-solicitation" provision). Plaintiffs responded to these accusations by filing a lawsuit seeking declaratory relief; specifically, an order finding Plaintiffs did not misappropriate trade secrets in violation of Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, that Fernando did not violate his Agreement with Streck, and that the holdover provision of the Agreement is void as against public policy.

Streck denies Plaintiffs are entitled to the relief requested, and it alleges Plaintiffs' claims are barred by the doctrines of estoppel, waiver, laches, unclean hands, and the applicable statute of limitations. (Filing No. 69, at CM/ECF p. 11).

2.    Streck's Amended Counterclaims.

Streck asserts counterclaims against CFGenome and Fernando. (Filing No. 59, at CM/ECF pp. 7-46), which allege, in essence,[2] as follows:

While working for Streck, Fernando was integrally involved in Streck's business, including the research, design, product development, and marketing of the Streck Cell-Free BCT. Within that capacity, Fernando gained access to Streck's confidential information and trade secrets, including the documented

---

[2] The 40-page counterclaim is a very detailed narrative. The court's description attempts to summarize those facts supporting the elements of Streck's 14 counterclaims.

formulas, compilations, processes, procedures, and techniques developed by Streck for its Cell-Free BCT.

Dr. Ryan, founder of Streck, and Fernando are members of CFGenome. CFGenome was formed in June of 2014. Dr. Ryan had established a laboratory at UNMC, and on August 10, 2014, Fernando represented to UNMC personnel that he hoped "to develop noninvasive prenatal diagnostic tests"—the precise field he worked in for Streck as a researcher and developer of the Cell-Free BCT—in a paid position at Dr. Ryan's UNMC laboratory. When Fernando left his Streck employment in September of 2014, he denied any intent to work for Dr. Ryan. Contrary to this representation, Fernando began working with Dr. Ryan, and ultimately the ProTeck BCT was created. CFGenome and Fernando could not have developed a blood collection product without using information Fernando obtained while working for Streck. As such, the ownership of the ProTeck BCT must be assigned to Streck.

In July 2016, Fernando, on behalf of CFGenome, personally approached at least one Streck customer and informed that customer that CFGenome will be able to provide alternative blood collection tubes at a price much lower than Streck's current pricing. In addition, CFGenome has misrepresented the performance and cost advantages of using the ProTeck BCT compared to the Cell-Free BCT. CFGenome's webpage lists its members and their former employment for Streck, without disclaiming a continued affiliation between CFGenome and Streck. By doing so, CFGenome is using Streck's reputation to promote and market CFGenome's products, leaving the impression that Streck is endorsing CFGenome, and confusing customers and vendors as to the source of products on the market. And CFGenome's marketing materials and instructions,

including verbiage and diagrams, were copied and/or derived from Streck's Cell-Free BCT materials and copyrighted artwork.

Fernando's conduct on behalf of CFGenome violated the confidentiality, holdover, and non-solicitation terms of his Agreement with Streck.

Streck alleges the following 14 Counterclaims against CFGenome and Fernando:

I.      misappropriation of trade secrets in violation of the DTSA;
II.     breach of contract;
III.    tortious interference with contract;
IV.     tortious interference with prospective advantage;
V.      declaratory judgment as to intellectual property rights;
VI.     Lanham Act violation as to tube stability;
VII.    Lanham Act violation for attempting to capitalize on Streck's reputation and good will in the industry by falsely implying CFGenome and its members remain affiliated with Streck;
VIII.   Nebraska Deceptive Trade Practice Act violation as to tube stability;
IX.     Nebraska Deceptive Trade Practice Act violation for attempting to capitalize on Streck's reputation and goodwill in the industry by falsely implying CFGenome and its members remain affiliated with Streck;
X.      trademark infringement;
XI.     copyright infringement;
XII.    unjust enrichment;
XIII.   unfair competition based on confusion between product source; and
XIV.    breach of fiduciary duty.

(Filing No. 59, at CM/ECF pp. 29-44, ¶¶ 97-203). Streck seeks injunctive relief and damages, including but not limited to recovery of Streck's lost profits, disgorgement of wrongfully gained profits, general damages and consequential damages, and where applicable, statutory and/or punitive damages.

CFGenome and Fernando raise a plethora of defenses. In addition to challenging whether evidence will support the elements of Streck's claims, they allege Streck's claims are barred, in whole or in part, by the statute of limitations, estoppel, laches, waiver, and/or unclean hands, and the Digital Millennium Copyright Act, 17 U.S.C. § 512. CFGenome and Fernando allege Streck's claims to enforce the Agreement must be denied as unconscionable and in violation of public policy, and Streck's claims based on the speech or communicative conduct of CFGenome and Fernando violate the First Amendment. CFGenome and Fernando allege Streck's copyright claims are barred by the doctrines of fair use, misuse of copyright, and implied license, and the Lanham Act claims are barred by the doctrine of fair use. CFGenome and Fernando allege Streck has failed to mitigate its damages, and any statutory damages sought are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained in violation of the Due Process clause.

3.    Streck's Third Party Claims.

Streck filed a third party claim against Gary Krzyzanowski, a former Streck employee. (Filing No. 59, at CM/ECF pp. 47-54, ¶¶ 1-39). Streck's third party claim alleges as follows:

Krzyzanowski was responsible for manufacturing the Cell-Free BCT while at Streck, and he was familiar with the technical challenges Streck faced when

attempting to manufacture that product on a commercial scale. Krzyzanowski knew the confidential and trade secret solutions employed by Streck to overcome those manufacturing challenges. His duties included injecting the formula used into the Cell-Free BCT.

Krzyzanowski's employment at Streck was terminated on August 5, 2014. Shortly thereafter, Krzyzanowski was offered and accepted employment for CFGenome. He then attempted to recruit a key employee away from Streck in September of 2016. He is now a member of CFGenome, performing the same responsibilities at CFGenome that he did for Streck, and using his Streck knowledge and experience to do so.

Prior to his departure from Streck, Krzyzanowski entered into an Employee Confidential Information, Inventions, and Non-Solicitation Agreement mirroring the Agreement signed by Fernando. Along with Fernando, Krzyzanowski published an abstract which included confidential and trade secret information obtained while working for Streck. And like Fernando, in website marketing for CFGenome, Krzyzanowski recites his professional experience at Streck while failing to explain that neither he nor CFGenome are currently affiliated with, or sponsored or approved by, Streck. Krzyzanowski copied Streck's instructional materials, diagrams and artwork to promote CFGenome's competing ProTeck BCT.

Streck alleges claims against Krzyzanowski for:

I.      breach of the confidentiality and holdover provisions of his Agreement with Streck;

II.     misappropriation of trade secrets in violation of the DTSA; and

III.    a declaratory judgment as to intellectual property rights.

([Filing No. 59, at CM/ECF pp. 47-54](#), ¶¶ 1-39).

Streck seeks injunctive relief and damages, including but not limited to recovery of Streck's lost profits, disgorgement of wrongfully gained profits, general and consequential damages, and where applicable, statutory and/or punitive damages.

Krzyzanowski alleges most, if not all, the same defenses alleged by CFGenome and Fernando in response to Streck's counterclaims. ([Filing No. 144](#)).

B. <u>The Discovery in Dispute</u>.

The parties agreed that subpoenas could be served on the University of Nebraska Medical Center ("UNMC") and a former Streck employee, Patricia Alvarado ("Alvarado"). On August 29, 2018, Streck served its notice of intent ([Filing No. 180-2](#)) to serve these subpoenas. ([Filing No. 180-3](#) and [Filing No. 180-4](#).) CFGenome, Fernando, and Krzyzanowski (collectively "CFG") objected to portions of the proposed subpoenas.

The parties have engaged in several meet and confer sessions beginning in October 2018 to discuss the discovery disputes over the third party subpoenas, issues related to CFG's Motion for Protective Order ([Filing No. 118](#)), Streck's Motion to Amend ([Filing No. 140](#)), and the resulting Order of this court ([Filing No. 157](#)). CFG objected to the subpoenas and suggested ways to narrow them. ([Filing No. 180-5](#)).

During a call with the undersigned magistrate judge on March 12, 2019, the parties mentioned there were ongoing disagreements regarding the third-party subpoenas. ([Filing No. 160](#)). Following the call, Streck revised the subpoenas. CFG objected and reasserted the same positions it had taken during previous meet and confer sessions.

On May 1, 2019, the parties participated in another telephone conference with the undersigned magistrate judge. ([Filing No. 172](#)). Following the call, the parties met and conferred as ordered by this court, but they did not resolve the relevance and privilege issues asserted by CFG. As to the motions now pending before me, CFG suggests that as to some of the revised subpoena requests, the subpoenas can be issued as written, but some requests need to be narrowed and others excluded in their entirety as irrelevant to the claims and defenses alleged in this case.

As currently drafted, the Alvarado Revised Subpoena includes 24 requests and sub-requests. ([Filing No. 187-13](#)).[3] As to Alvarado, CFG states Streck may issue the as-drafted Revised Subpoena for requests numbers 1 through 16, and Streck may issue numbers 17 through 24 if limited to the following subject matters:

1.  Ryan Genomic,
2.  WLRyan Research,
3.  The formation of CFGenome and/or any predecessor entity,
4.  CFGenome's research, product development, product manufacturing, marketing and/or sales from August 1, 2014 through September 30, 2015.

---

[3] CFG's objections to the proposed Alvarado Revised Subpoena are at [Filing No. 180-7](#).

5. CFGenome's research, product development, product manufacturing, marketing and/or sales relating to CFGenome's Blood Exo DNA ProTeck and/or any product within the ProTeck product line as defined by the Court in the May 1, 2019 Order, and

6. The Lawsuit.

(Filing No. 179 at CM/ECF pp. 8-9).

As currently drafted, the proposed UNMC Revised Subpoena includes 30 requests, and several sub-requests. (Filing No. 187-12).[4] As to the UNMC Subpoena, CFG states Streck may issue the as-drafted Revised Subpoena for requests numbers 1, 2, 3, 16, 18, 19, 21, 23, and 30. CFG states that except as to the Ryan Foundation, Streck may issue the Revised Subpoena request numbers 10 through 13. And CFG states Streck may issue Revised Subpoena request numbers 24 through 29 if limited to the following subject matters:

1. Ryan Genomic,

2. WLRyan Research,

3. The formation of CFGenome and/or any predecessor entity,

4. CFGenome's research, product development, product manufacturing, marketing and/or sales from August 1, 2014 through September 30, 2015.

5. CFGenome's research, product development, product manufacturing, marketing and/or sales relating to CFGenome's Blood Exo DNA ProTeck and/or any product within the ProTeck product line as defined by the Court in the May 1, 2019 Order, and

6. The Lawsuit.

(Filing No. 179 at CM/ECF p. 9-10).

_____

[4] CFG's objections to the proposed UNMC Revised are at Filing No. 180-6,

CFG asserts that Revised Subpoena request "numbers 4, 5, 6, 7, 8, 9, 14, 15, 17, 20 and 22 seek information and topics that are not relevant to any of the claims and defenses in the lawsuit." (Filing No. 179 at CM/ECF p. 10).

To summarize, CFG objects to Streck's requests for:

- "All documents and/or Communications" between Alvarado or UNMC and Mr. Uphoff, Carol Ryan, Steven Ryan, and Donald Ryan; between Alvarado and Ms. Buland, Dr. Ryan, Fernando, and Mr. Krzyzanowski; between UNMC and Husch Blackwell, LLP; and between UNMC and Holland & Knight, LLP, relating to:

  -- Dr. Ryan's transition to UNMC in 2014;

  -- Alvarado's employment with UNMC;

  -- The establishment of a laboratory at UNMC; and

  -- The Nebraska Public Records Request dated February 22, 2017 from the Dobrusin Law Firm.

  (Filing No. 180-3, at CM/ECF pp. 8-10; Filing No. 180-4, at CM/ECF pp. 5-8, ¶¶ 17-24).

- Information about the laboratory space CFG uses at UNMC, including all documents and communications relating to that rental, records of payments made by CFG for the laboratory, credit card statements for accounts maintained by UNMC to pay fees and expenses for the laboratory space, and CFG's requests for laboratory space and equipment (Filing No. 180-3, at CM/ECF p. 5, ¶¶ 4, 5, 6, 8).

- All agreements and/or negotiations for agreements by and between UNMC and CFGenome, Ryan Genomic, or WL Ryan Research LLC, and by and between UNMC and Dr. Ryan, on his own behalf or on behalf of CFGenome, Ryan Genomic, or WL Ryan Research LLC, (but not on behalf of Streck); (Filing No. 180-3, at CM/ECF pp. 5, 7, ¶¶ 7 & 17).

- All documents and communications relating to payment of money or compensation by or between UNMC and Alvarado, Ms. Buland, Dr. Fernando, Mr. Krzyzanowski, Dr. Ryan, The Ryan Foundation, Ryan Genomic, CFGenome, and WLRyan Research. (Filing No. 180-3, at CM/ECF p. 5, ¶ 9).

- All documents and communications evidencing consideration paid to UNMC by Dr. Ryan, CFGenome, WL Ryan Research, or any entity controlled by Dr. Ryan for benefits received under the Consulting Agreement and/or Use Agreement. (Filing No. 180-3, at CM/ECF p. 7, ¶15).

- All Documents and Communications relating to any work performed by Dr. Ryan in connection with faculty at UNMC to help instill a "culture of commercialization." (Filing No. 180-3, at CM/ECF p. 7, ¶20).

- All communications between UNMC and CFGenome relating to the ownership and licensing of CFG's research performed in laboratory space remodeled with NIH funding. (Filing No. 180-3, at CM/ECF p. 7, ¶14).

- All documents and /or communications relating to any presentation by Fernando and/or Chai Jiang, and/or Krzyzanowski on or about April 12, 2018 at the American College of Medical Genetics and Genomics meeting regarding Stabilizing Fetal Cell-Free DNA Proportion in Maternal Blood Samples at Room Temperature for 28 Days Without Using Crosslinking Agents. (Filing No. 180-3, at CM/ECF p. 8, ¶22).

Streck requests that this court deny CFG's Motion and allow the Revised Subpoenas to issue in their entirety. (Filing No. 184).

The discovery dispute at issue has been brewing since October 2018. The court has conferred with the parties, and the parties have conferred with each other several times in an effort to resolve the dispute without formal motion practice. There was ample time and opportunity to narrow the discovery requests before a motion was filed. Under such circumstances, I will not re-draft or narrow Streck's discovery requests by judicial ruling. The court will rule on them as written by Streck.

ANALYSIS

CFG asserts "This discovery dispute is simple. The at-issue requests in the Revised Subpoenas, on their face, request extensive irrelevant information from nonparties." ([Filing No. 179 at CM/ECF p. 12](#)). CFG asserts that the at-issue requests are not relevant to the claims and defenses alleged; Streck asserts the requests are clearly relevant. ([Filing No. 179 at CM/ECF p. 13](#)). Streck argues that the relevance of its requests is apparent from the allegations of the pleadings and must be construed in the context of the hiring of Fernando and Krzyzanowski in 2014. ([Filing No. 186, at CM/ECF p. 2](#)).

As reflected in the parties' respective briefs, the discovery disputes at issue can be categorized as follows:

- Funding and Laboratory Resources available to CFG, including

    - Money and/or Consideration exchanged between UNMC and CFG;

    - UNMC/CFG Negotiations and Agreements

    - The Ryan Foundation

    - Laboratory Resources

- Dr. Ryan's transition to work at UNMC;

- Alvarado's employment with UNMC;

- The public records request served on UNMC;

- National Institutes of Health—Claim of Ownership

- April 12, 2018 ProTeck Poster Presentation

With limited exceptions, the parties have not identified which requests belong in which category and are subject to which arguments.[5] Nonetheless, the court will attempt to categorize the requests by topic and then address the parties' arguments.

A.    Funding and Laboratory Resources.

1.    Money and Consideration Exchanged
      UNMC proposed subpoena:    Topics 9 and 15

_____

[5] CFG asserts discovery requests which were not specifically discussed during the parties' May 6, 2019 meet and confer should not be addressed by the court. Streck asserts CFG has requested broad relief, but it does not address each topic that it seeks to exclude. Streck "submits that the Court should not afford any relief to CFGenome for any unaddressed topics." (See Neb. Civ. R. 7.1(a)(1)(A) "A party's failure to brief an issue raised in a motion may be considered waiver of that issue.") Specifically, Streck argues it is entitled to issue UNMC requests 14, 20, and 22 because CFG did not discuss objections to this topic in its briefing.

Both parties make arguments supported by case law and the court's rules. But in the interest of avoiding yet another round of motions and briefing, the court will address the merits of every request at issue.

Streck's proposed subpoena to UNMC requests "all documents and communications" regarding any money or other consideration exchanged between UNMC and CFG or Dr. Ryan, or any entity related in any way to CFG or Dr. Ryan. Streck argues:

> [I]n this complex case involving a claim of independent development of technology funded by CFGenome, Streck should have the right to "follow the money" to develop its case (by seeing, for instance, who was involved, when took and how they were involved, what, where and when activities took place and the like), particularly in view of CFGenome have placed funding in issue in its Amended Complaint.

([Filing No. 186, at CM/ECF p. 8](#)). Streck argues it is entitled to discovery on funding because who, what, when, and how CFG's activities were funded will help explain "how the ProTeck tube came to market so quickly, whether Intellectual Property ("IP") assignment obligations have been triggered, and who else may seek to lay claim on any of the IP rights because of the funding arrangements." ([Filing No. 186, at CM/ECF p. 3](#)). Streck argues "CFGenome's true cost of development of the ProTeck BCT product line is relevant to any damages calculation." ([Filing No. 186, at CM/ECF p. 4](#)). Streck claims it is entitled to discover information regarding UNMC's business decision to collaborate with CFGenome in establishing a laboratory in 2014 because such information relates to the value of the intellectual property used in developing the ProTeck product line. ([Filing No. 186, at CM/ECF p. 8](#)). Finally, Streck argues "paragraph 24 of the Amended Complaint filed by CFGenome LLC and Dr. Fernando squarely places the funding of CFGenome at issue in this litigation." ([Filing No. 186, at CM/ECF pp. 2-3](#)).

The court initially notes that the mere reference to CFGenome's funding in Plaintiffs' complaint does not necessarily open the door to extensive discovery regarding that statement. A court need not permit discovery as to every

statement within a pleading. Demanding extensive discovery as to facts which are not critical to the ultimate decision, or which have already been admitted in responsive pleadings or in prior discovery responses, is not proportionate to the needs of the case. If an allegation in a pleading is merely background information, previously admitted, and/or irrelevant surplusage, that allegation does not support a discovery request merely because it was recited in a pleading.

Streck argues that both the actual costs incurred by CFG to develop the ProTeck BCT and the funding sources and amounts received by CFG for its research and development, are relevant to the issue of damages. CFG agrees that Streck is entitled to see CFGenome's revenues and expenses to assess the damage claims, arguing Streck already possesses information showing CFG's full costs (including equipment purchases, material purchases, rent, etc.) and revenues for inventing the ProTeck BCT. (Filing No. 192, at CM/ECF p. 7). But CFG argues information regarding the source of that funding is not relevant. Further, it notes that the consulting agreement between UNMC and CFG assigns all intellectual property rights to CFG, thus UNMC may not lay claim to any IP rights resulting from its funding. (Filing No. 187-5 at CM/ECF p. 21).

This case is about CFG's research and development of the ProTeck BCT and whether that process misappropriated Streck's confidential information and trade secrets, promoted unfair competition against Streck, and violated Streck's contractual rights. But Streck's requests, as written, demand UNMC's funding information about all money or consideration exchanged between UNMC and Dr. Ryan, CFGenome, and any persons or entities affiliated with or related to Dr. Ryan and CFGenome, including the compensation received by CFGenome employees such as Alvarado. (Filing No. 180-3, at CM/ECF p. 5, ¶9). And

contrary to Streck's argument, the extent of UNMC's willingness invest in CFGenome's research and development efforts from the outset provides little, if any, insight as to the value of the ultimate result of those efforts. Particularly in the area of scientific research, vast resources are often invested in research and development which do not lead to a marketable product.

UNMC proposed subpoena requests 9 and 15 encompass information unrelated to the development of the ProTeck BCT at issue, and to that extent, the requests are clearly irrelevant.

2. UNMC/CFG Negotiations and Agreements
UNMC proposed subpoena:    Topics 7, 17, 20

Streck demands production of "[a]greements and/or negotiations for agreements by or between UNMC and Dr. Ryan, on behalf of himself and/or any other person (including, but not limited to, CFGenome, Ryan Genomic, or WL Ryan Research LLC)," excluding any agreements and/or negotiations for agreements by or between UNMC and Streck. (Filing No. 180-3, at CM/ECF p. 5, ¶7). And to the extent not produced in response to other requests, Streck demands production of "all agreements and/or records of negotiations for agreements between UNMC and CFGenome, The Ryan Foundation, Ryan Genomic and/or WLRyan Research." (Filing No. 180-3, at CM/ECF p. 7, ¶17). Streck further demands "All Documents and Communications relating to any work performed by Dr. Ryan in connection with faculty at UNMC to help instill a "culture of commercialization." (Filing No. 180-3, at CM/ECF p. 7, ¶20).

CFG objects to these requests, asserting they are overbroad in scope, vague, and seek discovery of irrelevant documentation. As to Streck's use of the phrase "culture of commercialization," Streck argues that the "phrase was used

by UNMC employee Michael Dixon in an email dated July 31, 2015, when negotiating consideration for discounted lease space with Dr. Ryan and CFGenome." It argues "the full consideration exchanged for the support provided by UNMC to CFG is relevant to many issues, including the cost element of damage calculations." (Filing No. 184 at CM/ECF p. 14).

The court also fails to understand why Streck needs to know all the details of CFG's and/or Dr. Ryan's financial and professional relationship, agreements, and communications with UNMC, all the documents and communications regarding the agreement between CFG and/or Dr. Ryan and UNMC to provide laboratory space and equipment on UNMC property, or their alleged plans to collaborate and promote a "culture of commercialization," to assess the merits of its claims regarding the ProTeck BCT and its damages related to that product.

Streck's demands in UNMC proposed subpoena requests 9, 15, and 20 are overbroad, request irrelevant information, and are not proportionate to the needs of the case.

3. The Ryan Foundation
   UNMC proposed subpoena:    Paragraph (f) of topics 10-13

Streck acknowledges that its proposed subpoenas seek any communications by UNMC with all possible funding sources. Those suspected sources include the Ryan Foundation, a charitable organization formed by Dr. Ryan. (Filing No. 186, at CM/ECF p. 5). Streck argues that CFGenome and UNMC have jointly published an article stating financing for research conducted by CFGenome and UNMC was provided by the University of Nebraska Foundation, (Filing No. 186, at CM/ECF p. 4), and the Ryan Foundation has donated to the Nebraska Foundation's Obstetrics and Gynecology Research

Fund #1712 since 2014. Streck states development of the ProTeck BCT is consistent with the purposes of the #1712 Fund, and therefore Streck is entitled to obtain information on whether and to what extent CFGenome directly, or indirectly through the Nebraska Foundation, received support from the Ryan Foundation to support CFGenome's research at UNMC. Streck essentially argues that if the Ryan Foundation is providing funding to UNMC or to the University of Nebraska Foundation, and then UNMC or the University of Nebraska Foundation provides funds to CFGenome, Streck is entitled to conduct discovery on the source of CFGenome's funding from the Ryan Foundation. (See Filing No. 184 at CM/ECF p. 11).

Assuming the Ryan Foundation directly or indirectly provided monetary support to CFGenome, the court fails to see how that fact is relevant to either the liability or damages issues raised in this case. Moreover, assuming some of the information requested is potentially relevant, the breadth of Streck's requests for all communications and documents with the Ryan Foundation encompasses information that is wholly irrelevant to this case.

Paragraph (f) of topics 10 through 13 of Streck's proposed UNMC subpoena requests information irrelevant to this case and disproportionate to its needs.

     4.    <u>Laboratory Resources</u>
          UNMC proposed subpoena:    Topics 4, 5, 6, 8, and
                                         Paragraph (e) of topics 24-29
          Alvarado proposed subpoena:  Paragraph (f) of topics 17-24

Streck requests detailed information regarding CFG's receipt and use of a laboratory facility and equipment at UNMC, including the monetary transactions

arising from the UNMC/CFG relationship. CFG asserts that it asked Streck "about the relevance of the requests as there was no definition provided as to what 'establishment' of a laboratory space means and there was no facial relevance as to the scope of the request." (Filing No. 179 at CM/ECF p. 6). In response, Streck allegedly explained that it wanted each and every document or communication that in any way involved the use of the laboratory space, including any funding and financing information. Streck asserted this information was "plainly relevant" and refused to revise the request. (Filing No. 179 at CM/ECF p. 6). Streck argued that the laboratory space was relevant because the reagent and tubes were manufactured in the laboratory space. CFG asserts that Streck is in possession of documents which show that the reagent and tubes are not manufactured in that laboratory. (Filing No.180-1 at CM/ECF p. 5 ¶ 18).

As with Streck's demands for funding information, Streck's requests for information regarding the UNMC laboratory resources are broad and include information irrelevant to Streck's explanation of need. Streck requests "All Documents and/or Communications relating to the rental of laboratory space," "All records of payments made by or on behalf of CFGenome, and/or Dr. Ryan for reimbursement of any expenses incurred . . . for the laboratory maintained at UNMC," "All credit card statements for accounts maintained by UNMC for the purpose of paying for fees and expenses incurred . . . at the laboratory space maintained at UNMC," and "All Documents and/or Communications . . . relating to any requests for lab space or requests for equipment . . . ." Filing No. 180-3, at CM/ECF p.5, ¶¶ 4, 5, 6 & 8). These requests are not limited to the resources used and expenses incurred in the developing and marketing the ProTeck BCT, and they provide no insight as to CFG's use of Streck's confidential information and trade secrets.

Topics 4, 5, 6, and 8 and Paragraph (e) of topics 24-29 of Streck's proposed UNMC subpoena, and Paragraph (f) of topics 17-24 of Streck's proposed Alvarado subpoena are overbroad, request irrelevant information, and are not proportionate to the needs of the case.

B.    Dr. Ryan's transition to work at UNMC
        UNMC proposed subpoena:    Paragraph (d) of topics 24-29
        Alvarado proposed subpoena:  Paragraph (d) of topics 17-24

Streck requests "[a]ll documents and/or communications" relating to Dr. Ryan's transition to UNMC in 2014. Streck argues:

> facts relating to Dr. Ryan's transition to UNMC relate to many issues identified in the pleadings in this case, including the ownership of all intellectual property, the use of Streck's confidential information and trade secrets, and the reasonableness of the covenants contained in the Streck Employment Agreements signed by Dr. Ryan, Dr. Fernando and Mr. Krzyzanowski.

(Filing No. 186, at CM/ECF p. 5).  Streck further explains that Fernando accepted a paid position as a UNMC researcher 11 days before he resigned from Streck, told UNMC he hoped "to develop noninvasive prenatal diagnostic tests" while employed at UNMC, and then falsely assured Streck that he would not be working with Dr. Ryan. Streck therefore argues:

> CFGenome's position that Streck is not entitled to pursue discovery from UNMC on the establishment of the laboratory or Dr. Ryan's transition to UNMC to work with Dr. Fernando is meritless. These issues are squarely placed in issue by the pleadings, and CFGenome's contention that "[t]he at-issue request in the Revised Subpoenas have no relevance to any of these claims or defenses thereto" . . . is controverted by the pleadings and logic.

([Filing No. 186, at CM/ECF p. 9](#)). CFG argues that Streck's requests lack any definition of what was meant by the "transition" of Dr. Ryan to UNMC, and this problem is exacerbated by the fact that Dr. Ryan had worked with UNMC since 2007 and was never a UNMC employee. ([Filing No. 179 at CM/ECF p. 6](#)).

Streck's conclusory response CFG's objections does little to explain how information about Dr. Ryan's 2014 withdrawal from Streck and his continued work at UNMC will shed light on who owns the intellectual property behind the ProTeck BCT, whether Dr. Ryan or CFGenome used Streck's trade secrets or confidential information to develop the ProTeck BCT, and whether the terms of Fernando's Agreement were reasonable and enforceable. And due to the expansive nature of requests for "all documents and communications," the burden of responding is disproportionate to the value of collecting discovery to prove the allegations of paragraph 42 of Streck's counterclaim; that is, to explain Fernando's timing and motivation to accept a position at UNMC.

Even assuming there is some link between the discovery Streck is requesting and its stated purpose, the breadth of Streck's demands extends well beyond that purpose. For example, Streck's requests encompass information regarding any discussions of remuneration owed; number of employees anticipated; office space and furnishings requested or provided; anticipated length of the collaboration between CFGenome and UNMC; expected research endeavors beyond developing the ProTeck BCT; access, security, cleaning and maintenance for Dr. Ryan's or CFGenome's work area, etc. These topics, and many others included within the scope of Streck's requests, are wholly irrelevant to the claims and defenses raised in the pleadings.

C.    Alvarado's employment with UNMC
      Alvarado proposed subpoena:  Paragraph (e) of topics 17-24

Streck demands that Alvarado produce "All documents and/or Communications" between herself and Mr. Uphoff, Carol Ryan, Steven Ryan, Donald Ryan, Ms. Buland, Dr. Wayne Ryan, Dr. Fernando, and Mr. Krzyzanowski regarding her employment with UNMC.

CFG does not object to the Alvarado requests related to the formation of CFG and/or any predecessor entity or the requests related to CFG's research, product development, manufacturing, marketing, and/or sales. It objects only to the relevance of the documents and communications related to Alvarado's employment by UNMC, a non-party. CFG argues that Streck has failed to show how Alvarado's documents and communications with nonparties about her employment are relevant to the claims and defenses in this case. As to Streck's requests for Alvarado's communications with Fernando and Krzyzanowski, CFG argues responsive information should be sought from parties, not a third party, and may duplicate what CFG has already produced.

In response to CFG's objections, Streck explains,

Ms. Alvarado was a Streck employee who moved with Dr. Ryan and the others to UNMC in the August/September 2014 timeframe. The subpoenas cover information relating to Ms. Alvarado's employment with UNMC, consultancy to CFGenome, and the records she maintained concerning her activities with the CFGenome laboratory operated on the premises of UNMC. She is listed as a participant in the research activities of the CFGenome/UNMC research in the ProTeck published paper.

([Filing No. 186, at CM/ECF p. 6](#)).  Streck argues:

In addition to her employment by UNMC in August/September 2014, Ms. Alvarado also was the beneficiary of a waiver of the UNMC job posting policy in May 2015. . . . How the waiver came about, and the

role she and UNMC jointly played in the development of the CFGenome ProTeck product is relevant to the underlying trade secret and contract issues in the case. Information from those activities will give insight into the circumstances and timing of the concepts leading to the ProTeck tube.

(Filing No. 186, at CM/ECF p. 11).

Even assuming Streck has shown that Alvarado's UNMC employment and role are relevant to the alleged claims and defenses, as with the requests previously discussed, production of "All Documents and/or Communications" Alvarado exchanged with eight other people regarding her employment would include information that has nothing to do with this case; e.g., retirement, vacation, and sick time received, medical or pension benefits, password security practices, etc. Streck's requests, as drafted, extend far beyond the stated purpose of receiving documentation explaining Alvarado's role, if any, as a consultant to CFG, her activities at the CFG laboratory operated on UNMC's premises, or the circumstances and timing of the concepts leading to the ProTeck tube. Streck's requests seek irrelevant information. Requiring Alvarado's response would be disproportionate to the needs of the case.

     D.     Public Records Request served on UNMC
             UNMC proposed subpoena:    Paragraph (h) of topics 24-29
             Alvarado proposed subpoena:  Paragraph (i) of topics 17-24

Streck requests "All Documents and/or Communications" between UNMC/Alvarado and various individuals/entities relating to "The Nebraska Public Records Request dated February 22, 2017 from The Dobrusin Law Firm." CFG argues that it asked Streck how these communications were relevant and Streck responded by asking how these communications were *not* relevant. (Filing No. 179 at CM/ECF p. 7). CFG argues that Streck has not explained how documents

relating to a public records request are relevant to the claims and defenses in this case.

Streck claims it is entitled to "all documents maintained by UNMC or Ms. Alvarado" related to the public records request made after CFGenome instituted this litigation, "because Streck needs to verify that all relevant documents were in fact located and produced." (Filing No. 184 at CM/ECF pp. 5-6). Streck asserts that it needs the discovery to identify all participants in the startup and to establish the motivation and intention of such participants. It further argues that the requested documents would "go to the state of mind of CFGenome and to damages." (Filing no. 184 at CM/ECF p. 10). Streck asserts that "Efforts to secure complete and unredacted copies of the records have been frustrated by CFGenome." (Filing No. 184 at CM/ECF p. 9). As an example, Streck refers to an equipment list that had been redacted.

CFG argues that this equipment list was redacted to exclude equipment used only for non-ProTeck activities, research, and development. (Filing No. 192, at CM/ECF p. 9, n. 10). CFG further asserts that it has already agreed to produce the unredacted equipment list, and it will be produced in its next document production. (Filing No. 192, at CM/ECF p. 10). CFG argues that this category of requests, used to verify that all relevant items were produced is "admittedly duplicative of information that has already been discovered." (Filing No. 192 at CM/ECF p. 9).

The court agrees that under the circumstances presented, serving a subpoena on a nonparty to verify CFG's document production is duplicative work and not proportionate to the needs of the case. See Fed. R. Civ. P. 26(b)(2) (The court must limit discovery otherwise allowed if "the discovery sought is

unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]").

Moreover, at the core, Streck's discovery relating to the public records request is based on mistrust of CFG and its counsel, not on whether Streck needs all documents related to the public records request to pursue the claims and defenses discussed in the pleadings. Streck argues the UNMC and Alvarado communications and documents with various nonparties relating to the public records request are relevant because CFG has been unwilling to produce documents concerning the CFG/UNMC relationship and CFG and UNMC have been "in apparent communication over the Public Records request and appear to have been acting in concert with each other." (Filing No. 184 at CM/ECF p. 10). Streck supports its position by arguing CFG's counsel "threatened action to block further access to the public records," after the records request was issued to UNMC. (Filing No. 184 at CM/ECF p. 10, citing Filing No. 187-7). This assertion mischaracterizes the alleged "threat" by CFG's counsel.

In January 2017, discovery was stayed in this case pending a ruling on the trade secret identification, and new discovery deadlines were not set until August 28, 2017. (Filing No. 42, Filing No. 56) The public records request was sent in February 2017. The letter from CFG's counsel containing the alleged threat to "block further access" was dated March 22, 2017. In it, counsel asserts that Streck only issued a public records request after it became apparent that "the proper avenue for obtaining confidential and proprietary information – through the discovery process, in which materials are shielded by a protective order – would take more time" due to the stay of discovery. (Filing No. 187-7 at CM/ECF pp. 1-2). What Streck asserts is an effort by CFG to frustrate Streck's information gathering was actually an effort to stop Streck from using a public records

request to perform discovery in a case that was stayed by the court. CFG was explaining why discovery between parties and in accordance with court rules is more appropriate than a public records request issued to a nonparty when the request seeks non-public, confidential information related to a pending case.

Streck has not sufficiently explained how the requests for documents and communications related to the public records request served on are relevant to the specific claims or defenses at issue in this case, and the relevance is not immediately apparent to the court. Streck's proposed requests for documents and communications related to its public records request served on UNMC will be quashed.

E.    National Institute of Health—Claim of Ownership

Proposed UNMC subpoena request 14 seeks:

All Communications between UNMC (including, but not limited to Communications to/from Michael Dixon and/or James Linder) and CFGenome relating to the ownership and licensing of any research conducted by Dr. Fernando or others at CFGenome in laboratory space remodeled with funds from the National Institute of Health (NIH).

(Filing No. 187-12 at CM/ECF p. 8).

CFG objected to the issuance of Request 14 to the extent that it relates to research conducted by Fernando that is unrelated to the ProTeck BCT. (Filing No. 180-6 at CM/ECF p.  13). In its brief in opposition, Streck argues that UNMC records indicate CFG has been conducting commercial activities in a federally funded laboratory, and information related to this is relevant to ownership rights of CFG intellectual property. Only that research conducted by CFG that is subject

to this lawsuit (as defined in Filing No. 174) is relevant. Streck's request seeks irrelevant information and will be quashed.

F.    April 12, 2018 ProTeck Poster Presentation

Topic 22 of Streck's proposed subpoena directed to UNMC demands production of:

> All Documents and/or Communications relating to any presentation by Dr. Fernando and/or Chai Jiang, and/or Gary Krzyzanowski on or about April 12, 2018 at the American College of Medical Genetics and Genomics meeting regarding Stabilization Fetal Cell-Free DNA Proportion in Maternal Blood Samples at Room Temperature for 28 Days Without Using Crosslinking Agents.

(Filing No. 187-12, at CM/ECF p. 9).

CFG objected to the request to the extent that it seeks discovery of documentation or communications protected by the attorney-client privilege or attorney work product doctrine. CFG also objected to this request as irrelevant and disproportionate to the needs of this case. (Filing No. 180-6 at CM/ECF p. 16).

Streck's request seeks discovery regarding a public poster presentation about the ProTeck product which was authored at UNMC by Fernando and Krzyzanowski, and then presented at a conference in 2018. Streck asserts this request is relevant because it details research activities by CFG, repeatedly mentions Streck, and contains statements comparing the ProTeck BCT to Streck's Cell-Free BCT. Streck argues documentation regarding the poster presentation is relevant to Streck's claims of trade secret misappropriation, contract issues, and false advertising. CFG's briefing does not discuss this issue,

and CFG has presented no evidence to support its privilege and work product claims.

UNMC Subpoena Topic 22 is specific, appropriately narrow in scope, and relevant to the issue of whether CFG misappropriated Streck's trade secrets and its name and reputation in the industry, and whether it misrepresented the comparative features of the ProTeck BCT and the Cell-Free BCT. As to this request, CFG's motion to quash and for a protective order will be denied.

Accordingly,

IT IS ORDERED:

1) The motion to quash filed by Plaintiffs/Counter-Defendants CFGenome, LLC, Dr. M. Rohan Fernando, and Third-Party Defendant, Gary Krzyzanowski, ([Filing No. 178](#)), is granted in part and denied in part as follows:

   a) The motion for protective order/to quash is granted as to subparagraphs (d), (e), (f), and (i) of topics 17 through 24 of the proposed subpoena to be served on Patricia Alvarado;

   b) The motion for protective order/to quash is granted as to paragraphs 4 through 9, 14, 15, 17, and 20; subparagraph (f) of topics 10, 11, 12, and 13; and, subparagraphs (d), (e), and (h) of topics 24 through 29 of the proposed subpoena to be served on UNMC.

   c) The motion for protective order/to quash is denied as to paragraph 22 of the proposed subpoena to be served on UNMC.

2) If a party intends to file a discovery or sanctions motion in the future, the parties must first meet and confer in good faith and in person to resolve the issues. If no resolution is reached, the filing party must schedule a hearing before me to be held in my courtroom on the

record, with counsel for the parties and a representative of Streck and of CFGenome physically present at the hearing. The party representative who attends any future discovery or sanctions motion hearing will be identified on the court's docket as the person who will be the party representative seated with the attorneys at the counsel table during the trial of this case.

3) On or before August 30, 2019, the parties shall jointly file:

    a) A list of all cases, state and federal, that have been filed since 2014 or are currently contemplated for filing in the future:

        i) between the parties to this case or any employees/members of those parties; or

        ii) between the descendants of Dr. Wayne Ryan; or

        ii) arising from Dr. Ryan's departure from Streck; or

        iii) arising from the formation of, or business relationships established by, CFGenome.

    b) For each case listed in response to paragraph 3(a) of this order, provide a brief description (preferably one paragraph) of the claims raised.

    c) For each case listed in response to paragraph 3(a) of this order that has been filed in any court, provide:

        i) the forum, case name, and case number; and

        ii) the current status of the case (closed with a description of the outcome or judgment; or open and at what stage of preparation (discovery ongoing, mediation scheduled, trial settling date, etc.)

August 22, 2019              BY THE COURT:

                                    *s/ Cheryl R. Zwart*
                                    United States Magistrate Judge