IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CFGENOME, LLC, a Delaware limited liability company, and DR. M. ROHAN FERNANDO, an individual,<br><br>    Plaintiffs/Counter-Defendants,<br><br>vs.<br><br>STRECK, INC.,<br><br>    Defendant/Counter-Plaintiff.<br><br>vs.<br><br>GARY KRZYZANOWSKI,<br><br>    Third-Party Defendant | Case No. 4:16-cv-03130<br><br><br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on the agreement stated on the record on October 22, 2019, by CFGenome, LLC ("CFGenome"), Dr. M. Rohan Fernando, Ph.D. ("Dr. Fernando"), Gary Krzyzanowski ("Mr. Krzyzanowski") and Streck Inc. ("Streck") (collectively the "Parties"). After conducting a settlement conference on October 21-22, 2019, in the above-captioned case (the "CFGenome Litigation"), the Parties and their representatives agreed to the terms of settlement on the record. (Doc. No. 227). Pursuant to the Parties' terms of settlement, certain unresolved terms were presented for decision by the undersigned Magistrate Judge at an additional settlement conference held on January 24, 2020. This Court entered a Decision on Unresolved Settlement Terms and Order on February 28, 2020 (Doc. No. 236). Now, pursuant to the Parties' agreement

1

on the record on October 22, 2019, the undersigned Magistrate Judge now recommends for approval the settlement of the Parties and finds as follows.

## BACKGROUND

Dr. Wayne L. Ryan, Ph.D. ("Dr. Ryan") was a scientist in the field of clinical laboratory products and founded Streck, a Nebraska corporation, in 1971. Dr. Ryan worked at Streck for approximately 42 years, until August 2014.

Dr. Fernando worked as a scientist at Streck. In September 2014 after Dr. Fernando submitted his resignation letter to Streck, Dr. Fernando began employment with University of Nebraska Medical Center ("UNMC"), conducting various research projects in molecular biology. In August of 2016, Dr. Fernando became Chief Executive Officer ("CEO") of the entity known as CFGenome, a biological technology-focused company started by Dr. Ryan.

Mr. Krzyzanowski had also been employed at Streck, most recently within the Research and Development Department until August 5, 2014 when the relationship with Streck was terminated. Following the relationship termination, Mr. Krzyzanowski began employment at UNMC in August 2014, where he remains employed. In August of 2016, Mr. Krzyzanowski also became a member of CFGenome. He worked under Dr. Fernando, who served as the laboratory's Principal Investigator, throughout the employment at UNMC.

In summer of 2016, Streck discovered that Dr. Fernando and CFGenome were developing a new blood collection tube product known as the Blood EXO DNA ProTeck blood collection tube ("ProTeck BCT"). Streck sent a letter to Dr. Fernando about its discovery shortly after its discovery. CFGenome and Dr. Fernando filed a Complaint for Declaratory Judgment against Streck on August 3, 2016. (Doc. No. 1). Streck responded by filing its Answer, Affirmative

2

Defenses, and Counterclaims against both Dr. Fernando and CFGenome, including claims of misappropriation of trade secrets, breach of contract, tortious interference with contractual and business relations, trademark infringement, copyright infringement, and seeking an order awarding Streck ownership of the technology and any related patents and/or pending applications developed by Dr. Ryan and Dr. Fernando for CFGenome. (Doc. No. 59). Streck also filed a Third-Party Complaint against Mr. Krzyzanowski., further alleging claims of misappropriation of trade secrets and breach of contract associated with an identical Employee Confidential Information, Inventions, and Non-Solicitation Agreement for Gary. (Doc. No. 59). Streck later asserted the allegedly misappropriated trade secrets were also found in additional CFGenome potential products utilizing the same formula as the ProTeck BCT, which came to be known by the Parties and the Court as the "ProTeck Product Line."

Dr. Ryan died on November 3, 2017, resulting in the appointment of Steven Ryan ("Steve Ryan") as the personal representative of the Dr. Wayne L. Ryan Estate (the "Dr. Ryan Estate"). Dr. Ryan's estate's sole beneficiary is the Wayne L. Ryan Revocable Trust (the "Dr. Ryan Trust"). The Dr. Ryan Trust has a primary beneficiary, The Ryan Foundation, which states that it is a charitable 501(c)(3) organization founded by Dr. Ryan and his late wife Eileen. At the time of filing the Complaint, Dr. Ryan's Trust owned approximately 52% of Streck's non-voting stock and approximately 33% of Streck's voting Stock.

After engaging in extensive motion practice and discovery for over three years, the Parties participated in a two-day settlement conference October 21-22, 2019, with the undersigned Magistrate Judge serving as mediator. On October 22, 2019, the Parties settled the claims in the CFGenome Litigation. Certain unresolved settlement terms were presented for decision by the undersigned Magistrate Judge at an additional settlement conference held on January 24, 2020.

These unresolved terms centered on the effect the CFGenome Litigation would have on two separate, pending matters. The first matter involves claims asserted by Streck against the Dr. Ryan Estate pending in the District Court of Douglas County, Nebraska, Case No. CI18-10193 (the "Estate Litigation"). The second matter involves claims asserted by Streck against Steven Ryan, Carol Ryan and Barry Uphoff pending in this Court, *Streck, Inc. v. Ryan et al.*, 8:17-cv-00494-JMG-CRZ (the "Director Case"). This Court entered a Decision on Unresolved Settlement Terms and Order on February 28, 2020 (Doc. No. 236), which directed what effect the CFGenome Litigation settlement would have on both the Estate Case and Director Case relating to certain unresolved issues.

Pursuant to that February 28, 2020 Order and the Parties' October 22, 2019 agreement on the record, the Parties have submitted to the Court a copy of the Parties' proposed Settlement Agreement and Release, which reflects the terms of settlement the Parties request this Court to approve. Because of the proprietary, trade secret information at issue for all Parties in this proceeding, the Parties continue to agree the terms of settlement and this Court's Orders entered surrounding that settlement are highly confidential and should remain as restricted access. As a result, the Settlement Agreement itself will not be placed on the docket and, if filed by the Parties in the future for any reason, must be filed as restricted and not published to non-parties or the general public.

## **FINDINGS**

A district court must consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 932-33 (8th Cir. 2005). A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." *Id*. at 934. The experience and opinion of counsel on both sides may be considered, as well as whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir.1995). A court may also consider the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits. See City *P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996).

This lawsuit is technically complex, requiring significant time and expense for all Parties. To present this case at trial, the Parties will need to marshal and present facts contained within thousands of pages of product design history records, laboratory notebooks made by Dr. Fernando, scientific records and test data, patent applications, and financial documents. In addition, the complexity requires both lay and expert testimony on the issues of both liability and damages. At the time the settlement conference occurred, the Parties had requested the Court's involvement in resolving discovery disputes focusing on written discovery and had conducted several depositions. Before the settlement conference, Streck had served expert reports, requiring rebuttal expert reports. By settling now, the Parties will avoid significant additional legal fees and costs to

complete both fact and expert discovery and proceed to the jury trial, expected to require at least a four-week period.

The proposed settlement comes at an advanced stage, after both sides explored the facts and the potential benefits and risks of proceeding to trial. The duration, extent of discovery, and continuous zealous advocacy on both sides evidence a settlement arising from the Parties' arms-length negotiations. *City Partnership Co. v. Atlantic Acquisition Ltd. Part.*, 100 F.3d 1041, 1043 (8th Cir. 1996) (holding the court considers whether the parties conducted discovery, engaged in arms-length bargaining).

This Court must also weigh how the expense of further litigation over this matter affects Dr. Ryan's Estate and Dr. Ryan's Trust in its assessment of whether the settlement should be approved. Because at the time of filing the Complaint, Dr. Ryan's Trust owned approximately 52% of Streck's non-voting stock and approximately 33% of Streck's voting Stock, any ongoing costs incurred by Streck during this litigation ultimately could cause a diminution of value in the Trust's assets or could cause a detriment to the Trust's beneficiary, The Ryan Foundation, in view of the potential benefit to be derived from continuing the litigation to its conclusion. Further, Dr. Ryan's Estate, as a member of CFGenome, will continue to incur additional expense and effort if the CFGenome Litigation continues. As a result, this settlement is therefore in the best interests of the Dr. Ryan Estate and the Dr. Ryan Trust, as well as in the best interests of Streck and its shareholders.

Finally, due to the financial expectancy[1] of the Ryan Foundation and relationship between CFGenome, Streck, and Streck's CEO, Constance Ryan, this Court must weigh whether the

---

[1] Streck reserves all rights in any other litigation or otherwise to object to the alleged "financial expectancy of the Ryan Foundation" in connection with Streck and/or its CEO, subject to the limitations contained within the Parties' Settlement Agreement.

CFGenome Settlement complies with the various regulations prohibiting acts of self-dealing. Based upon the information provided to the undersigned Magistrate Judge and approval of the settlement terms by the Nebraska Attorney General's Office, the undersigned Magistrate Judge finds that the CFGenome Litigation settlement terms violate no self-dealing regulations within the Internal Revenue Code, Nebraska Revised Statutes or the United States Code.

For the foregoing reasons, the Court finds the CFGenome Litigation proposed settlement terms are fair, reasonable, and adequate, serve the interests of all parties, including Dr. Ryan's Estate, by fully resolving all claims asserted, and are not the product of fraud or collusion between or among the Parties, and should be approved by this Court.

Accordingly,

IT IS RECOMMENDED to the Honorable Judge John M. Gerrard, United States District Judge of the District of Nebraska, under 28 U.S.C. § 636(b), that the Parties' motion for Court approval of the Settlement Agreement, as set forth on the record on October 22, 2019, is granted. (Doc. No. 227). In support of this recommendation:

1. All Parties have waived the right to object to the above recommendation to approve the Parties' settlement and the Parties have jointly approved this Findings and Recommendation. In particular, Streck and Constance Ryan (in her personal capacity) do not object to the authority of Steven Ryan, as Personal Representative of Dr. Wayne Ryan, to enter into the settlement of this matter.

2. Pending this Court's approval, the Parties will execute the Settlement Agreement and Mutual Release which reflect the settlement and those additional terms identified within this Court's Decision on Unresolved Settlement Terms and Order (Doc. No. 236).

7

3. Pending this Court's approval, and execution of the Settlement Agreement and Release submitted for approval, the Parties will voluntarily dismiss, with prejudice, all claims, counterclaims and third-party claims with each side bearing its own costs and attorney fees.

The Parties' compliance with the CFGenome Litigation settlement will be monitored by this Court until further order of the Court. This includes the duty of all Parties to continue to comply with the Stipulated Protective Order (Doc. No. 96) and the Decision on Unresolved Settlement Terms and Order on February 28, 2020 (Doc. No. 236). If any Party believes a settlement term has not been complied with, that Party may bring it to the attention of this Court by following the undersigned Magistrate Judge's discovery resolution process and Local Rules of this jurisdiction. This judicial oversight shall not prevent the Parties from any additional remedies for an alleged breach of the Settlement Agreement that the Parties have expressly agreed to therein.

Dated this 11th day of May, 2020

BY THE COURT:

The Honorable Judge Cheryl R. Zwart
United States Magistrate Judge